GLEASON, Appellant, v. DEPARTMENT OF TRANSPORTATION, Respondent.*

*No. 422. Submitted under sec. (Rule) 251.54 November 28, 1973.—
Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 74.)

* Motion for rehearing denied, without costs, on March 5, 1974.

For the appellant the cause was submitted on the briefs of *Donald C. Haberman* of Milwaukee.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Albert O. Harriman,* assistant attorney general.

CONNOR T. HANSEN, J. Petitioner was beaten unconscious in a robbery in Milwaukee on June 20, 1972. Subsequently, on at least three separate occasions, he suffered a loss of consciousness. On July 5, 1972, petitioner was driving south on North Lake Drive in the 3300 block in Milwaukee, when his auto crossed over the center line and collided head on with another vehicle northbound. The petitioner was interviewed by a police officer after the accident but stated that he could not remember the accident and appeared to the officer to be in a dazed condition.

On September 10, 1972, petitioner was umpiring a baseball game and again suddenly lost consciousness. He began to shake and was laid down by some bystanders. He was taken to a hospital in an ambulance and apparently remembered nothing of the incident after he regained consciousness at the hospital.

On November 28, 1972, petitioner was driving down a one-way street in Milwaukee when he again lost consciousness and struck several parked automobiles. Witnesses who saw the accident, approached the petitioner's auto shortly thereafter and observed that he was unconscious, foaming at the mouth and having an apparent seizure. Petitioner later stated he remembered nothing about the accident.

Police reports regarding the accidents on July 5th and November 28th were forwarded to the respondent and the petitioner was asked to undergo a medical examination.

Dr. Bernard S. Schaeffer sent his evaluation of the petitioner's condition to the respondent's division of motor vehicles, on January 4, 1973. This report indicated that the petitioner had denied having experienced any similar instances subsequent to November 28th. He said he has ". . . felt well since that time, but he has a fear of something happening." An electroencephalogram was done which was thought to be "minimally abnormal."

Moreover, Dr. Schaeffer concluded that it was ". . . not possible at this time to make any prognosis as to the future."

Dr. Schaeffer saw petitioner again on February 12, 1973. In a letter to the respondent dated February 23, 1973, Schaeffer indicated that a repeat electroencephalogram was entirely "normal" and that in his opinion ". . . there is no indication of any neurological defect at this time, and he (petitioner) is able to drive his car."

The respondent's administrator subsequently notified petitioner in a letter dated May 3, 1973, that his medical case history had been reviewed by the medical review board. It was explained that upon the recommendation of this board, it was the decision of the administrator to cancel his license. The letter also explained:

"After you have been free from seizure for a full one year period, you may then request a personal appearance before the Medical Review Board; or, if you choose, you may wait until you have been free from seizure for a full two-year period and we will then consider reinstatement of your operating privilege.
"After you have remain [sic] free from seizure for a full one year period and the Medical Review Board recommends favorably on your behalf, the possibility of you being eligible for reinstatement of your operating privilege on a limited basis is very good."

A Demand for Surrender of Operator's License and Cancellation of Driving Privileges, dated May 16, 1973, was mailed to petitioner.

A petition for review was filed by petitioner's counsel on May 23, 1973, alleging that the decision to cancel was unsupported by substantial evidence. Moreover, it was alleged that the decision of the medical review board was made upon unlawful procedure because it failed to comply with sec. 227.07 and sec. 227.20 (1) (c), Stats., and because such decision was made without first giving

the petitioner a proper hearing as required by due process.

An order was entered by the trial court restraining the respondent from enforcing its order of cancellation of the petitioner's driving privileges pending a decision by the court on the merits. This restraining order has been extended to the present time. (*See: Jennings v. Mahoney* (1971), 404 U. S. 25, 92 Sup. Ct. 180, 30 L. Ed. 2d 146.)

On July 18, 1973, the petitioner and his counsel appeared before the medical review board. The transcript of those proceedings reflect that the petitioner was allowed to explain the three occurrences in which he had lost consciousness. However, the facts set forth in the reports from Dr. Schaeffer and the police were not disputed. The doctors on the medical review board discussed with the petitioner the nature of these seizures and Dr. Crowley of the board explained that it made no difference whether these seizures were due to epilepsy or post-traumatic loss of consciousness. Dr. Crowley explained that:

"We have set policies—two years without seizure, ok for license; after a year without seizure, you can appear before us and discuss the situation, and if it looks like you're free of seizure, we can recommend that you get a license by the end of the year—you're not quite a year."

On July 24th, a letter was mailed to the petitioner stating that the medical review board had recommended that he not be considered eligible for licensing until he was free from seizure for a minimum period of one year.

On August 1, 1973, the trial court entered judgment affirming the decision of the respondent cancelling petitioner's license.

The following issues are presented on this appeal:

1. Whether the petitioner's license to drive could properly have been cancelled in accordance with the Wis-

consin statutes without a prior hearing as to his physical fitness to drive?

2. Whether the petitioner was denied procedural due process?

3. Whether the respondent's decision to cancel the petitioner's license was supported by substantial evidence?

*Cancellation.*

Sec. 343.25, Stats., provides as follows:

". . . **Cancellation of licenses:** The administrator shall cancel a license:

"(1) Whenever he determines that the license was issued upon an application which contains a false statement as to any material matter; or

"(2) Within 10 days after receiving a written request from a person who signed the application of a person under 18 years of age, or a notice of cancellation or termination of insurance, as provided in s. 343.15; or

"(3) When the license is held by a person under 18 years of age and the administrator receives satisfactory evidence of the death of the adult who signed the application for the license; or

"(4) When the person holding the license falls into one of the classes of persons to whom the law prohibits issuance of a license."

Sec. 343.06, Stats., in pertinent part provides as follows:

". . . **Persons not to be licensed.** The division shall not issue a license:

". . .

"(6) To any person subject to epileptic seizures, except as provided in s. 343.09.

"(7) To any person who is afflicted with or suffering from any mental or physical disability or disease such as

to prevent him from exercising reasonable control over a motor vehicle."

The Demand for Surrender of Operator's License and Cancellation of Driving Privileges issued to petitioner by the respondent's administrator stated, in part: ". . . you are not eligible to hold a Wisconsin license because of your physical condition . . . and all operator's licenses issued you . . . are hereby cancelled in accordance with Section 343.25 of the Wisconsin Statutes. . . ."

The surrender and cancellation order issued by the administrator makes no reference to the subsection of sec. 343.25, Stats., that was relied upon when the order was issued. Counsel for petitioner acknowledges that petitioner ". . . clearly was faced with subsection (4)"; which provides for the cancellation of the driver license of a person who falls into one of the classes to whom the law prohibits issuance of a license.

However, even in acknowledging that he was faced with a sub. (4) cancellation, petitioner was not informed by the order of the particular provision of sec. 343.06, Stats., relied upon by the respondent. Sec. 343.06 sets forth eleven different situations in which a person is not to be licensed. In reality, the lack of specificity in the order is acknowledged by counsel for the respondent because at trial it appears reliance was first placed on sec. 343.06 (6) relating to epileptic seizures. On appeal, respondent argues that the cancellation order was issued pursuant to sec. 343.06 (6) ; or in the alternative, sec. 343.06 (7), relating to mental or physical disability or disease.

We are of the opinion that when a demand for surrender and cancellation of a driver's license is made pursuant to any of the provisions of sec. 343.25, Stats., or statutes incorporated therein by reference, the respondent should specifically identify the particular statutory provisions relied upon. The citizens of the state are

entitled to such notice from their governmental agencies and departments.

However, under the facts of this case and based upon the record before us, the failure of the respondent to specifically identify the subsections relied upon does not constitute grounds for reversal. The demand for surrender and cancellation stated that petitioner was not eligible to hold a Wisconsin driver's license "because of your physical condition." Presumably, such language would encompass either subs. (6) or (7) of sec. 343.06, Stats. We think sub. (7) is applicable because it relates to "physical disability or disease." The medical review board did not specifically identify petitioner as being subject to epileptic seizures. Dr. Crowley, of the board, stated that for licensing purposes it made no difference whether petitioner's three episodes were epileptic or post-traumatic seizures.

There is no statutory requirement for a hearing before petitioner's license could be cancelled pursuant to sec. 343.25 (4), or 343.06 (6) or (7), Stats. Nevertheless, the petitioner argues that the provisions of sec. 227.07 require a hearing in the instant case. Sec. 227.07 is inapplicable because this is not a "contested case" as defined by sec. 227.01 (2). *Daly v. Natural Resources Board* (1973), 60 Wis. 2d 208, 216, 217, 208 N. W. 2d 839. Therefore, the procedure followed by the respondent was in accordance with the applicable statutes which do not require a hearing prior to cancellation.

*Procedural due process.*

Even though there is no statute requiring a precancellation hearing, the issue remains as to whether procedural due process requires such a hearing.

In *State v. Stehlek* (1953), 262 Wis. 642, 649, 56 N. W. 2d 514, this court held that the safety responsibility law, in requiring the commissioner of motor vehicles

to summarily suspend a driver's license for a driver's failure to post security as required after an accident (by sec. 85.09 (5), Stats. 1951) and authorizing the commissioner to fix the amount of security within certain limits (sec. 85.09 (5), (9), 1951), does not deny due process of law or equal protection of the laws in violation of the federal and state constitutions.

In *Stehlek, supra,* page 649, the court said:

"Any appropriate means adopted by the legislature to insure competence and care on the part of its licensees and to protect others using the highways is consonant with due process. Suspension of a license without a prior hearing, but subject to subsequent judicial review, does not violate *due process* if reasonably justified by a compelling public interest. . . ."

Also, in *Stehlek, supra,* page 650, the court said:

"Statutes enacted under the police power which dispense with hearings preliminary to suspension of licenses are not unique or peculiar to the field of drivers' licenses. The deliberate omission of hearing procedure preliminary to the suspension of a license in the field of motor vehicle operators' licenses does not offend the due-process clauses of the United States and state constitutions and is neither new nor different from other licensing fields subject to regulation under the police power. (Citation omitted.). . ."

In *Bell v. Burson* (1971), 402 U. S. 535, 91 Sup. Ct. 1586, 29 L. Ed. 2d 90, the United States Supreme Court considered the constitutionality of the financial responsibility provisions of the Georgia Motor Vehicle Safety Responsibility Act. Ga. Code Annot., sec. 92A–601, *et seq.* (1958). In *Bell,* the licensee was driving his automobile when a five-year-old girl rode her bicycle into the side of it. The statute under consideration required the suspension of a driver's license without a hearing as to probable liability if the driver could not show

financial responsibility. The Georgia Motor Vehicle Safety Responsibility Act was declared unconstitutional for lack of procedural due process. However, in *Bell, supra,* page 542, the United States Supreme Court held:

". . . it is fundamental that *except in emergency situations (and this is not one)* due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective. . . ." (Emphasis supplied, except as to *before*.)

Thus, *Bell, supra,* stands for the proposition that emergency situations are an exception to the rule requiring a precancellation or prerevocation hearing.

In *State v. Sinner* (1973), 207 N. W. 2d 495, the Supreme Court of North Dakota held that under a statute providing for the discretionary suspension of a driver's license where that driver has been convicted four times of a moving violation constituted an "emergency situation" which obviated the necessity of a presuspension hearing as required by due process.

In *Sinner,* page 498, the court also said:

"The decisions covering the issue of the constitutionality of suspending a driver's license without a pre-suspension hearing are not in accord." (Comparing *Commonwealth Department of Public Safety v. Thomas* (Ct. of App. Ky. 1971), 467 S. W. 2d 335 (1971), and *Broughton v. Warren,* Del. Ch. 281 Atl. 2d 625 (1971).

*See generally:* Annot. (1950), *Necessity and sufficiency of notice and hearing before revocation of driver's license,* 10 A. L. R. 2d 833 (7–12 A. L. R. 2d Later Case Service, p. 842, sec. 6), where it is recognized that:

"Statutes not requiring or not providing for notice and hearing before revocation or suspension of license are not unconstitutional."

In *Cox v. Hjelle* (1973), 207 N. W. 2d 266, 270, the Supreme Court of North Dakota reached the same conclusion as *State v. Sinner, supra,* and held as follows:

". . . Where the driving record of the petitioner discloses four convictions involving movement of a vehicle upon the public highways within the preceding two-year period, such driving record constitutes an emergency situation which obviates the necessity for a presuspension hearing. Suspension in such case does not contravene the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (Citations omitted.)"

In *Stauffer v. Weedlun* (1972), 188 Neb. 105, 195 N. W. 2d 218, 224, the Nebraska Supreme Court held that due process does not require notice and hearing before an order of revocation of one's license may be issued for point violations.

In *Stauffer, supra,* page 114, the court held, *inter alia,* that:

"Under the Nebraska scheme the Director acts ministerially. The likelihood of error is small. The compelling public interest in removing from the highways those drivers whose records demonstrate unsafe driving habits outweighs the need for notice and hearing prior to the order to protect the individual against mistake. . . ."

Petitioner had had three episodes of lapsing into unconsciousness within a period of about six months. Two of them had occurred while he was driving an automobile in the heavily populated area of Milwaukee and resulted in damage to other automobiles. As one of the doctors on the medical review board observed at the time of the hearing before the board, it is fortunate that no one was injured or killed.

We are of the opinion that the information before the respondent at the time of the issuance of the cancellation order presented an emergency situation well within the pronouncement of *Bell, supra.* When petitioner's driving

record disclosed two episodes of unconsciousness within a few months, while driving, and which resulted in automobile collisions, such record presented an emergency situation and any procedural due process requirements for a precancellation hearing were obviated.

*Substantial evidence.*

The police reports, Dr. Schaeffer's statements, and the petitioner's own testimony before the medical review board, reflect that the three incidents in which the petitioner lapsed into a state of unconsciousness prevented him from exercising reasonable control of his automobile. This conclusion is compelled by the fact that two accidents resulted in the two instances which occurred while petitioner was driving.

At the hearing before the medical review board on July 18, 1973, petitioner took the position that he had not had any episodes of loss of consciousness since November, 1972, almost nine months, and that he would not, therefore, have them in the future. The physicians on the medical review board were of the opinion that a period of one year without an episode was more reasonable, and that such a period should expire before consideration was given to the return of his driving privileges. In addition to the three reported incidents, the medical review board took into consideration the heavily populated Milwaukee area in which petitioner had to drive.

The decision of the respondent is supported by substantial evidence.

*By the Court.*—Judgment affirmed.