GARGAGLIANO v SECRETARY OF STATE

OPINION BY N. J. KAUFMAN, J.

1. APPEAL AND ERROR—CONSTITUTIONAL LAW—CONSTITUTIONAL QUESTIONS.

*Constitutional questions will not be considered by an appellate court where there exist other decisive grounds for disposing of a case.*

2. MENTAL HEALTH—HOSPITALS—MICHIGAN VEHICLE CODE—CONVALESCENT STATUS—LEGAL CUSTODY—STATUTES.

*A person released from a mental hospital on convalescent status remains in the legal custody of the hospital and is still hospitalized for purposes of a section of the vehicle code (MCLA 257.303a).*

3. CONSTITUTIONAL LAW—DEPRIVATION OF PROPERTY—EX PARTE PROCEDURES—CRUCIAL NEED—EMERGENCY NEED.

*A state must show a crucial, perhaps emergency, need to justify the use of ex parte procedures for the deprivation of an important property interest.*

4. AUTOMOBILES—DRIVERS' LICENSES—SUMMARY SUSPENSION—SECRETARY OF STATE—POINT SYSTEM—FINAL JUDGMENT.

*The Secretary of State's summary suspension of the driver's license of a person who has accumulated a certain number of "points" through several driving convictions is proper where it*

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 13, 14; 5 Am Jur 2d, Appeal and Error §§ 873, 874.
[2] 41 Am Jur 2d, Incompetent Persons §§ 44–47.
[3] 16 Am Jur 2d, Constitutional Law § 367.
[4–6, 9, 10] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 109–124.
[7] 73 Am Jur 2d, Statutes §§ 164, 165, 180, 192.
[8] 73 Am Jur 2d, Statutes § 412.
[11] 73 Am Jur 2d, Statutes § 158.
[12] 73 Am Jur 2d, Statutes § 390.
[13, 15] 7 Am Jur 2d, Automobiles and Highway Traffic § 106.
[14] 16 Am Jur 2d, Constitutional Law §§ 558, 559.

*is founded on the final judgments of trials in which the person was given the opportunity to make a full presentation and to fully contest the allegations against him, and the court rulings concerned specific driving disabilities rather than a general physical or mental status.*

5. STATUTES—AUTOMOBILES—DRIVERS' LICENSES—SUSPENSION OF DRIVERS' LICENSES—HEARING—PRIOR HEARING—CONSTITUTIONAL LAW.

*A statute which requires suspension of a person's driver's license after admission to a hospital for mental illness and upon notification by the medical superintendent to the Department of State that the person has become afflicted with mental or physical infirmities or disabilities rendering it unsafe for the person to drive, is unconstitutional where the statute fails to accord a hearing prior to the suspension of the person's driver's license (MCLA 257.303a).*

CONCURRENCE IN RESULT BY ALLEN, P. J.

6. AUTOMOBILES—DRIVERS' LICENSES—MENTAL PATIENTS—EX PARTE SUSPENSIONS—SECRETARY OF STATE—PROBATE COURT HEARING —PROCEDURAL SAFEGUARDS—CONSTITUTIONAL LAW.

*There is no constitutional impediment to a temporary ex parte suspension by the Secretary of State of the driver's license of a person found mentally ill and committed to a state hospital following a probate court hearing which complied with all of the procedural safeguards required by law.*

7. STATUTES—CONSTRUCTION—PRIORITIES.

*It is presumed that the more recently enacted section of a statute has priority over another section where two sections are mutually incompatible.*

8. STATUTES—CONSTRUCTION—SPECIFIC PROVISIONS—GENERAL PROVISIONS.

*Specific provisions of a statute prevail over general provisions of the same statute.*

9. STATUTES—AUTOMOBILES—DRIVERS' LICENSES—EX PARTE SUSPENSIONS—HEARING—POST-TERMINATION HEARING—DUE PROCESS.

*A statute which authorizes the temporary ex parte taking of a driver's license is violative of due process where it does not provide for a speedy post-termination hearing (MCLA 257.303a).*

DISSENT BY O'HARA, J.

10. AUTOMOBILES—DRIVERS' LICENSES—SUSPENSION OF DRIVERS' LI-
CENSES—CONSTITUTIONAL LAW—RIGHT TO HEARING.

*Due process requires that a person whose driver's license has
been suspended by the Secretary of State be afforded the
opportunity for a hearing at which arguments or defenses can
be raised in response to the Secretary of State's decision.*

11. STATUTES—CONSTRUCTION—SUBJECT—PURPOSE—CONSISTENCY—
CONFLICT.

*Statutes relating to the same general subject matter or having
the same basic purpose are construed as consistent and compli-
mentary to each other so as to avoid the appearance of irrecon-
cilable conflict.*

12. STATUTES—CONSTRUCTION—COURTS—COURT OF APPEALS—CONSTI-
TUTIONAL LAW—DUTY.

*The Court of Appeals has a duty to construe statutes as constitu-
tional, if possible.*

13. AUTOMOBILES—MENTAL PATIENTS—DRIVERS' LICENSES—SUSPEN-
SION—LICENSE APPEAL BOARD—SETTING SUSPENSION ASIDE—
STATUTES.

*The license appeal board may modify or set aside any final
determination to suspend or revoke a driver's license, including
a suspension by the Secretary of State of the license of a person
admitted to a hospital for mental illness; and the board may
act in such cases without notice from a medical superintendent
that the mental illness no longer exists. (MCLA 257.303a,
257.322).*

14. CONSTITUTIONAL LAW—DUE PROCESS—STATES—SUMMARY ACTION
—PUBLIC INTEREST—RIGHT TO HEARING.

*A state is justified in acting summarily, and hence does so
without denying due process, when its interest in acting
promptly to protect the public against a serious threat to its
safety, health, or economic well-being outweighs the individu-
al's interest in having an opportunity to be heard before the
state acts, perhaps in error, in ways that may cause him
significant injury.*

15. AUTOMOBILES—MENTAL PATIENTS—DRIVERS' LICENSES—EX PARTE
SUSPENSIONS—RIGHT TO HEARING—CONSTITUTIONAL LAW.

*There is no constitutional impediment to a temporary ex parte
suspension of a person's driver's license, after the medical
superintendent of the hospital at which the person is a patient*

*for care and treatment of a mental illness has certified that the person's mental or physical condition makes it unsafe for him to drive, where a prompt hearing before the license appeal board is available upon timely request (MCLA 257.322, 257.303a).*

Appeal from Kent, John T. Letts, J. Submitted Division 3 January 14, 1975, at Grand Rapids. (Docket No. 19759.) Decided June 10, 1975.

Complaint by Victoria Gargagliano against the Secretary of State for a declaratory judgment that a section of the Motor Vehicle Code is unconstitutional, an injunction prohibiting enforcement of that section by defendant against plaintiff, and for revocation of defendant's order suspending plaintiff's driver's license. Judgment for plaintiff. Defendant appeals. Affirmed.

Legal Aid and Defender Association of Kent County (by *Norman K. Kravitz),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Varda N. Fink,* Assistant Attorney General, for defendant.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

N. J. KAUFMAN, J. This is an appeal by defendant Secretary of State from a declaratory judgment and permanent injunction entered by Kent County Circuit Court Judge John T. Letts.

The court ruled that § 303a of the Michigan Vehicle Code, 1949 PA 300, is unconstitutional and permanently enjoined the defendant from enforcing § 303a against plaintiff. The court also revoked

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the order with which defendant had suspended plaintiff's driver's license pursuant to the terms of § 303a, MCLA 257.303a; MSA 9.2003(1). Section 303a requires:

"(1) Upon the admission of any person to a hospital for care and treatment of a mental illness or at any time thereafter until the person is no longer hospitalized for treatment of a mental illness, the medical superintendent of any hospital at which the person is a patient for treatment shall notify the department if the person has an operator's or chauffeur's license and has become afflicted with mental or physical infirmities or disabilities rendering it unsafe for him to drive. Upon receipt of such notice the department *shall suspend* the license of the person. The license *shall remain suspended* and no renewal license shall be issued until the medical superintendent of the hospital at which the person is a patient for care and treatment of a mental illness shall notify the department that the condition no longer exists.

"(2) Any person adjudicated mentally ill prior to the effective date of this amendatory section shall be eligible to have his driving privileges restored or a renewal of his operator's or chauffeur's license if the medical superintendent of any hospital at which he is a patient for care and treatment, or if the licensed physician from whom the person is receiving treatment, shall certify to the department that he is no longer afflicted with mental or physical infirmities or disabilities rendering it unsafe for him to drive." (Emphasis supplied.)

Plaintiff was released from Kalamazoo State Hospital and placed on convalescent status on December 7, 1973. On December 12, 1973, the medical superintendent of the hospital notified the Department of State pursuant to § 303a. On January 7, 1974, plaintiff received a notification from the department that her operator's license would be suspended indefinitely as of January 12 and would remain suspended until she met the require-

ments of the licensing authority. The notice stated that the suspension could be appealed to the license appeal board and must be appealed within 10 days of the suspension. Instead of filing an administrative appeal, plaintiff brought suit in Kent County Circuit Court. There, as she does here, plaintiff claimed that § 303a is violative of the Fourteenth Amendment for two reasons: (1) because it deprived her of property without the procedural due process required and (2) because the standards it provides are so vague as to provide no guidance for administrative decision-making and no notice to a driver of when his license might be suspended.

Before we can make any determination concerning the constitutionality of § 303a, we must consider defendant's claim that there are significant nonconstitutional grounds on which this case can be decided. Defendant cites the well established rule of judicial construction that constitutional questions will not be considered where there exist other decisive grounds for disposing of the case. *Brown v Hill,* 216 Mich 520; 185 NW 751 (1921). Defendant contends that the trial court could have held that the defendant had not complied with § 303a and avoided a ruling on the constitutionality of that section. Defendant claims that the section does not allow a medical superintendent to send notice to the Department of State after a patient has been released from his care. In the instant case, defendant admits that it erred by taking congnizance of the notice because the notice was sent five days after plaintiff was released.

Plaintiff responds by arguing that the nonconstitutional grounds urged by defendant do not exist. Plaintiff claims that, at the time the notice was sent, she was still "hospitalized" under the terms

of § 303a and had not been "released". We agree with plaintiff. When plaintiff was released, she was on convalescent status. As plaintiff notes, under Michigan jurisprudence, a person on convalescent status remains in the legal custody of the hospital and is therefore still hospitalized. Convalescent status has been defined by law as including any patient "who is not discharged, but who is permitted by the medical superintendent to live apart from the state hospital * * * under the special regulations of the medical superintendent". MCLA 330.54; MSA 14.844. (Repealed by 1974 PA 258.) Further, MCLA 330.37a; MSA 14.837a provided that an individual on convalescent status "shall be subject at any time to be taken back within the enclosure of said hospital for any reason that may be satisfactory to the medical superintendent (Repealed by 1974 PA 258.)".[1] In fact, plaintiff had been returned to the hospital on one prior occasion.

Indeed, this may be the best factual situation on which we may consider the constitutionality of § 303a. Where an individual is confined to a hospital, suspension of an operator's license, which he cannot in fact use, may not be a severe deprivation. Where, however, the individual is on convalescent status and trying to function in society, the summary loss of mobility may be a severe deprivation. The procedure utilized in the latter case thus requires careful scrutiny.

Both parties base their arguments concerning the constitutionality of § 303a on the US Supreme

[1] *See also Billingsley v Birzgalis,* 20 Mich App 279, 281–282; 174 NW2d 17, 18–19 (1969), where this Court held that an individual on convalescent status continues to have standing to appeal a denial of his petition for a writ of habeas corpus since he is still within the legal custody of the hospital, thus being "sufficiently restrained of his liberty"; Op. Atty. Gen. 1961–62, No. 3548, p. 1.

Court case of *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971). Plaintiff claims that an application of the standards set forth in *Bell* mandate the law to provide a hearing prior to suspension of a driver's license. Defendant agrees that due process standards apply to this case but argues that a hearing held after the license has been suspended meets the *Bell v Burson* due process standards. Such a hearing, defendant notes, was made available to plaintiff by Department of State regulations.

In *Bell, supra,* the Court examined Georgia's Motor Vehicle Safety Responsibility Act which required that unless an uninsured motorist "involved" in an accident posted a security to cover damages claimed by aggrieved parties, his vehicle registration and operator's license would be suspended. A hearing was provided prior to suspension but any consideration of the driver's "fault" was excluded. The Court held that, since "fault" was a significant element in the decision to deprive a motorist of his license, "before the State may deprive [him] of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident".[2]

In determining the timing of a due process hearing, the Court set out as a guideline:

" * * * it is fundamental that except in emergency situations * * * due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." (Emphasis in original.)[3]

---

[2] 402 US 535, 542; 91 S Ct 1586, 1591; 29 L Ed 2d 90, 96 (1971).

[3] *Id.,* citations omitted.

The later case of *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), reaffirmed the *Bell* standards and explained its concept of "emergency situations" where a prior hearing would not be required:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. *Boddie v Connecticut,* 401 US [371, 379; 91 S Ct 780, 786; 28 L Ed 2d 113, 119 (1971)]. These situations, however must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food." (Footnotes omitted.) [4]

Relying on *Bell,* both plaintiff and defendant focus their analyses on whether or not the instant case presents an "emergency situation". However, the Supreme Court, in *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), has apparently abandoned the more definite "emergency situation" standard in favor of the more traditional "balancing of interests" test. In *Mitchell,* the Court, quoting a pre-*Bell* case, stated "[t]he very nature of due process negates any

[4] 407 US 67, 90–92; 92 S Ct 1983, 1999–2000; 32 L Ed 2d 556, 575–577 (1972).

concept of inflexible procedures universally applicable to every imaginable situation".[5] The Court upheld Louisiana's sequestration statute which allows a creditor to obtain a writ of sequestration against a debtor without prior notice or hearing. It did so using the balancing test. Under the balancing test, the validity of an *ex parte* procedure will be determined by comparing the extent to which it may subject a defendant to an arbitrary or wrongful deprivation of his property interests with the need of the state to use the procedure in order to further the interests of those it seeks to protect.

The Court found that Louisiana had a strong interest in preserving commerce by protecting disputed collateral from possible sale or destruction by the debtor and in avoiding potentially dangerous creditor self-help methods. The interest of the debtor in the collateral was seen to be weak since he did not have a full ownership interest in it. Further, the Court found that the debtor's interests were sufficiently protected by the statutory scheme. The Court stressed that the *ex parte* proceeding had judicial supervision, that the issues were uncomplicated and lent themselves to documentary proof, and that the statute provided a bond to protect the debtor from damages. It concluded "that the State has reached a constitutional accommodation of the respective interests of [the parties]".[6]

The *Bell, Fuentes* and *Mitchell* tests may, however, be conceptually reconciled into one basic standard. Commentators have analyzed the more rigid *Fuentes–Bell* rule of notice and hearing prior to deprivation of property as containing an im-

---

[5] *Cafeteria Workers v McElroy,* 367 US 886, 895; 81 S Ct 1743, 1748; 6 L Ed 2d 1230, 1236 (1961), quoted at 416 US 600, 610; 94 S Ct 1895, 1901; 40 L Ed 2d 406, 415 (1974).

[6] *Id,* at 610; 1901; 415.

plicit balancing test.[7] The Court implied that because of the societal importance attached to a driver's license in *Bell* and the harsh effect of the replevin law on the poor members of society in *Fuentes,* the balance would be weighted heavily against the *ex parte* remedy. Thus, to justify use of *ex parte* procedures where there is involved the deprivation of an important property interest in which the opposing party has a significant stake, the state must still show a crucial, perhaps emergency, need.

We have examined defendant's justification for the *ex parte* procedure in question, in light of the significance of the property interest involved and in the context of relevant decisions. Having done so, we find that § 303a is unconstitutional because it fails to accord a hearing prior to the suspension of a driver's license, and that plaintiff's license was wrongly suspended.

A driver's license is clearly an important enough property interest to require a showing by the state of a crucial need, to justify an *ex parte* suspension.[8] We need not stress further the significance of a driver's license in a mobile society, nor its importance to an individual, like the plaintiff, who is trying to reenter that society. Defendant justi-

---

[7] *See e.g.,* Note, *Procedural Due Process—The Prior Hearing Rule and the Demise of Ex Parte Remedies,* 53 Boston U L Rev 41, 52 (1973); Note, *The Supreme Court, 1973 Term,* 88 Harv L Rev 41, 77 (1974). *See also* Note, *Changing Concepts of Consumer Due Process in the Supreme Court—The New Conservative Majority Bids Farewell to Fuentes,* 60 Iowa L Rev 262, 297 (1974), in which the author contends that, while *Mitchell v W T Grant Co* overruled *Fuentes v Shevin,* the principles of *Bell v Burson* remained viable. The note was published before the release of *North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719; 42 L Ed 2d 751 (1975), in which the Supreme Court used *Fuentes* to strike down Georgia's prejudgment garnishment statute and in which Justice Stewart noted that the reports of the death of *Fuentes* "have been greatly exaggerated".

[8] *See Hurt v Secretary of State,* 42 Mich App 554; 202 NW2d 554 (1972).

fies the summary procedures of § 303a by claiming that:

"This statute reflects the legislative determination that an individual whose mental illness is so serious that hospitalization is required is not fit to drive when the medical superintendent of the hospital at which the person is a patient, presumably in consultation with his staff, determines that it is unsafe for such person to drive. In such circumstances there is probable cause to believe that the public safety is endangered by continuing to allow such a person to exercise driving privileges."

The problem with defendant's argument, as well as with § 303a, is that hospitalization does not in every case mean that a driver is dangerous to public safety. As the Supreme Court noted in *Mitchell,* some issues are "ill-suited for preliminary *ex parte* determination".[9] Section 303a requires that, when the medical superintendent informs the Department of State, the license shall be suspended. There must be, in a case where such an important property interest is at stake, some independent determination by a governmental official, not a statutorily-mandated rubber-stamping of the superintendent's determination.

The statute reduces the Secretary of State to a ministerial task, much as the court clerk who signed the replevin orders found unconstitutional in *Fuentes.*[10] The postsuspension appeal, which defendant makes available to a motorist, is meaningless. Even if defendant wanted to restore the license, § 303a would prevent it from doing so. The license can be restored *only* if the medical superintendent approves. Again, defendant has no choice.

[9] 416 US 600, 617; 94 S Ct 1895, 1905; 40 L Ed 2d 406, 419 (1974).
[10] *See Id,* at 616, fn 12; 94 S Ct at 1905; 40 L Ed 2d at 419.

Relevant decisions also militate against defendant's argument. Federal court decisions have almost uniformly required notice and hearing *prior* to suspension.[11] Most persuasive is the recent case of *Jones v Penny,* 387 F Supp 383 (MD NC, 1974). There, the court struck down a North Carolina statute which allowed summary revocation of an involuntarily committed individual's license. In *Jones,* the revocation took place following an administrative inquiry into the driver's competence. The Court cited *Bell v Burson, supra,* and noted

"In Bell, the constitutional infirmity lay in the fact that, while the hearing [was provided], consideration of the essential element was excluded. Here, while the crucial element * * * —driving competence—is considered prior to suspension, the licensee is given no notice and is excluded from participation in any way unless and until a request for *post*-revocation review is submitted." 387 F Supp 383, 393.

There are no state court cases directly in point. A few state cases have upheld summary license suspensions, but each challenged procedure contained one element which § 303a does not contain. In each, the administrative body had specific evidence which indicated that the specific driver might pose a danger. In each case, the motorist's acts bespoke a disability directly related to his ability to drive. In each case, only the most brief of

[11] *See, e.g., Holland v Parker,* 354 F Supp 196 (DSD, 1973), (holding South Dakota's implied consent statute unconstitutional for lack of prior hearing); *McNamara v Malloy,* 337 F Supp 732 (D Vt, 1971); *Pratt v Kaye,* 40 Law Week 2197 (1971), requiring a prior hearing before termination of license for "medical reasons"; *Reese v Kassab,* 334 F Supp 744 (WD Pa, 1971), requiring a prior hearing before termination of license based on Pennsylvania "point" system; *Slone v Kentucky Dept of Transportation,* 379 F Supp 652 (ED Ky, 1974), holding implied consent law invalid under *Bell v Burson, supra.*

*Cf. Christenson v Campbell,* 347 F Supp 82 (D Ariz, 1972); *Sandoval v Heckers,* 350 F Supp 127 (D Colo, 1972).

suspensions was allowed. In *Gleason v Wisconsin
Dept of Transportation,* 61 Wis 2d 562; 213 NW2d
74 (1973), the defendant suspended plaintiff's li-
cense after plaintiff, who had recently suffered a
head injury, had lapsed into unconsciousness while
driving three times in a six-month period. Twice,
he was involved in accidents as a result. In
*Broughton v Warren,* 281 A2d 625 (Del Ch, 1971),
and *Stauffer v Weedlun,* 188 Neb 105; 195 NW2d
218 (1972), the driver's license was suspended
pending a hearing after a number of "points" had
been accumulated through several driving convic-
tions.[12] A Federal court, however, struck down that
same system in Pennsylvania, based on the *Bell v
Burson* standards, *Reese v Kassab,* 334 F Supp 744
(WD Pa, 1971). In any event, summary suspensions
under point systems are distinguishable from sum-
mary suspensions under § 303a. In "point" cases,
the administrative body is not making its decision
in a vacuum. The suspension is not based on
unverified information supplied by one individual
but is founded on the final judgments of trials in
which the motorist was given the opportunity to
make a full presentation and to fully contest the
allegations against him. Additionally, the trial
court rulings concern specific driving disabilities,
not a general physical or mental status.

The only possible judicial involvement in a
§ 303a case is where, as here, the motorist has
been committed by a court. Such a commitment
does not, as would a driving conviction, represent
any kind of a judicial finding concerning the indi-
vidual's ability to drive. In addition, by the time
notice is sent under § 303a, the court's judgment
may well have been vitiated by years of treatment.

---

[12] *See also, Jones v Schaffner,* 509 SW2d 72 (Mo, 1974); *Daneault v
Clarke,* 113 NH 481; 309 A2d 884 (1973); *State v Roberge,* 306 A2d 13
(Me, 1973); *State v Sinner,* 207 NW2d 495 (ND, 1973).

Certainly, we could conceive of individual situations where evidence of a specifically dangerous individual could be provided to the Department of State and could justify a brief suspension pending a hearing. However, § 303a does not provide for such individual decisions, nor does it allow for any flexibility at all in administrative decision-making.

We find that plaintiff's second claim, that § 303a is facially unconstitutional for vagueness, is without merit. The Legislature could not be very much more specific when it required that the Secretary of State suspend the license of one found to be an "unsafe" driver because of "mental or physical infirmities or disabilities". Some flexibility is necessary for administrative decision-making. In providing this flexibility, a legislature always sacrifices some specificity of language. We must be sure, however, that this flexibility does not result in arbitrary or capricious action by administrative agencies. To this end, procedural safeguards must be assured, as we have discussed above.[13] Once proper procedures are instituted, a motorist will be able to raise and cure at his hearing any such problems resulting from incorrect application of the statute.[14]

Affirmed. Costs to plaintiff.

---

[13] *See* Davis, *Administrative Law Text* (3d ed), § 2.06, pp 36–41. *Cf. City of Saginaw v Budd,* 381 Mich 173, 178; 160 NW2d 906, 908 (1968), which found a municipal ordinance lacking in standards, with *City of Pleasant Ridge v Governor,* 382 Mich 225, 247; 169 NW2d 625, 632 (1969), which, although it incorporated by reference standards from another statute, quoted with approval the following language:

"It is not always necessary to prescribe a specific rule of action to govern the exercise of powers conferred, particularly where a standard is implied in the statute or ordinance conferring the power. The standard to guide a particular act which in terms is not limited by any specific standard may be found within the framework of the statute under which the act is to be performed, or may inhere in its subject matter or purpose, and a clearly defined field of action may implicitly contain the criteria which must govern the action." (Quotation from 1 Am Jur 2d, Administrative Law, § 116, pp 919, 920.)

[14] *Bell v Burson,* fn 2, *supra,* and the cases cited in footnotes 11 and

ALLEN, P. J. *(concurring in result).* I both agree
and disagree in part with the opinions of Judges
KAUFMAN and O'HARA. I agree with Judge
O'HARA that there is no constitutional impediment'
to the temporary *ex parte* suspension of plaintiff's
driver's license. It is true that *Bell v Burson,* 402
US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971),
*Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L
Ed 2d 556 (1972), and the most recent United
States Supreme Court case, *North Georgia Finish-
ing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719;
42 L Ed 2d 751 (1975), held that an *ex parte*
seizure of a property right without the opportunity
for a prior hearing or other safeguards against
mistaken repossession is violative of the 14th
Amendment. But those decisions were predicated
upon the absence of a fact which is present in the
instant case. In the case before us, there was a
hearing in the probate court of Kent County at
which time plaintiff was found mentally ill and
committed to the Kalamazoo State Hospital. This
was a judicially conducted hearing in compliance
with all of the "other safeguards" required by law.
A judicial hearing having been completed and
plaintiff having been determined to be mentally
ill, the State is justified in summarily acting so as
to deny, *temporarily at least,* the entrustment to
her of a high speed motor vehicle. It is a well-
known fact, of which we take judicial notice, that
accidents are frequently caused by mental disturb-

12 might also raise questions as to the validity of § 322, the section of
the motor vehicle act which provides an appellate procedure and
which Judge O'HARA cites as controlling § 303a. If *Bell* and the cases
which require a hearing prior to license suspension (fn 11) govern,
then the postsuspension hearing authorized by § 322 may be invalid
in many cases. Those cases which have not required a prior hearing
(fn 12) have relied on specific statutory provisions which guarantee a
speedy hearing, generally within 30 days. Section 322 has no such
guarantee. It requires the licensee to request a hearing within 10
days but does not require an immediate hearing.

ances far less serious than those requiring medical consultation or confinement in an institution.

*Fuentes, supra,* recognized that there are "extraordinary situations" which justify postponement of notice and hearing until after seizure of the property interest:

"Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food." 407 US at 91–92; 92 S Ct at 2000; 32 L Ed 2d at 576.

The judicially recognized state concern of protecting the public from misbranded foods or contaminated foods is not, in my opinion, significantly different from the concern of protecting the public from the hazards of drivers adjudged mentally disturbed.

However, I cannot subscribe to Judge O'HARA's innovative and constructive suggestion that, by judicial construction, § 303a is absorbed by § 322. This well-intended interpretation runs contrary to two well-recognized rules of statutory construction. Where two sections of a statute are mutually incompatible, one of which is enacted later than the other, it is presumed that the second enactment takes priority over the first. *Southward v Wabash R Co,* 331 Mich 138, 145–147; 49 NW2d 109 (1951), *Locke v Macomb County,* 31 Mich App 22, 25; 187 NW2d 500 (1971), *aff'd,* 387 Mich 634, 639; 199 NW2d 166 (1972). Section 322 was enacted by 1949 PA 300, effective September 23, 1949. Section 303a, relating to forfeiture of a driver's license upon notice from the medical superintendent, first appeared in 1961 PA 123, effec-

tive September 8, 1961. By this subsequent act, the Legislature clearly removed from the license appeal board any latent power it might otherwise have then had to restore a mentally ill person's driver's license. It never has been the practice of the license appeal board to construe § 303a as falling within the license appeal board's jurisdiction under § 322. The Department of State has consistently taken the position that, because of the specific language in § 303a, a license may not be restored until so authorized by the medical superintendent. Accordingly, bringing the matter before the license appeal board is an exercise in futility. Furthermore, § 303a is a specific provision. Specific provisions of a statute prevail over general provisions. *Linski v MESC,* 358 Mich 239, 244–245; 99 NW2d 582 (1959), *People v Bachman,* 50 Mich App 682, 687; 213 NW2d 800 (1973), *lv den,* 392 Mich 776 (1974).

In my view, the constitutional problem lies not in the taking of the driver's license, but in the absence of provisions permitting an early determination as to its restoration. Nothing in § 303a states how, when or if the medical superintendent is to appear before the license appeal board, or how his determination may be modified, overruled or even disputed. Assuming that the aggrieved person appeared before the license appeal board with medical witnesses who would testify that the applicant had sufficiently recovered to be able to drive with safety, the appeal board lacks power to make a restoration. Thus, in effect, the statute fails to provide a post-restoration hearing.

*Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), and *North Georgia Finishing, supra,* come down hard on the necessity of statutory provisions permitting a speedy deter-

mination of the property right temporarily taken. In *Mitchell,* the Court upheld the constitutionality of a Louisiana statute permitting an *ex parte* seizure of household appliances. In doing so, the Court pointed out that the statute "entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor proves the grounds upon which the writ was issued, * * * ". The Court then went on to distinguish *Fuentes* saying:

"Petitioner asserts that his right to a hearing before his possession is in any way disturbed is nonetheless mandated by a long line of cases in this Court, culminating in *Sniadach v Family Finance Corp,* 395 US 337 [89 S Ct 1820; 23 L Ed 2d 349] (1969), and *Fuentes v Shevin,* 407 US 67 [92 S Ct 1983; 32 L Ed 2d 556] (1972). The pre-*Sniadach* cases are said by petitioner to hold that 'the opportunity to be heard must precede any actual deprivation of private property.' Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided." 416 US at 611; 94 S Ct at 1902; 40 L Ed 2d at 415–416.

In *North Georgia Finishing, supra,* the Court struck down a Georgia *ex parte* garnishment statute, saying:

"Nor is the statute saved by the more recent decision in *Mitchell v W T Grant Co,* 416 US 600 [94 S Ct 1895; 40 L Ed 2d 406] (1974). That case upheld the Louisiana sequestration statute which permitted the seller-creditor holding a vendor's lien to secure a writ of sequestration and, having filed a bond, to cause the sheriff to take possession of the property at issue. The writ, however, was issuable only by a judge upon the filing of

an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. The Louisiana law also expressly entitled the debtor to an *immediate hearing after seizure* and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued.

"The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute." (Emphasis supplied.) 419 US at 606–607; 95 S Ct at 722; 42 L Ed 2d at 757.

As noted before, § 303a has none of the saving characteristics in the nature of a post-termination hearing, determined to be so important in the cases mentioned above. True, § 322 of the statute permits a person aggrieved to ask for a hearing before the license appeal board. In fact, forms were furnished plaintiff so as to facilitate such an appeal. But this provision and administrative process become meaningless in view of the express language in § 303a that the license may only be restored upon the affirmative statement of the medical superintendent of the state hospital to which the applicant had been confined.

I therefore agree with Judge KAUFMAN that § 303a is violative of due process and suggest the matter be called to the attention of the Legislature so that appropriate amendments may be made to properly assure due process safeguards allowing a determination on the return of the license.

Affirmed.

O'HARA, J. *(dissenting).* This opinion was assigned to Judge KAUFMAN for the preparation of the Court's opinion. I accept in its entirety his recitation of facts and his statement of the procedural sequence in this case.

I further agree with my colleague that the constitutional guarantee of due process requires that

plaintiff be afforded the opportunity for a hearing at which she can raise whatever arguments or defenses she chooses in response to the Secretary of State's decision to suspend her driving privileges.

I am, however, unable to agree with his conclusion as to the unconstitutionality of MCLA 257.303a; MSA 9.2003(1).

The instant case requires that this Court attempt to reconcile what at first glance are two ostensibly inconsistent expressions of legislative intent contained in the Michigan Vehicle Code.

Section 303a of the vehicle code, MCLA 257.303a, *supra,* provides in relevant part:

"Upon the admission of any person to a hospital for care and treatment of a mental illness or at any time thereafter until the person is no longer hospitalized for treatment of a mental illness, the medical superintendent of any hospital at which the person is a patient for treatment shall notify the department if the person has an operator's or chauffeur's license and has become afflicted with mental or physical infirmities or disabilities rendering it unsafe for him to drive. *Upon receipt of such notice the department shall suspend the license of the person. The license shall remain suspended and no renewal license shall be issued until the medical superintendent of the hospital at which the person is a patient* for care and treatment of a mental illness *shall notify the department that the condition no longer exists.*" (Emphasis added.)

In contrast with this provision is § 322 of the same vehicle code, MCLA 257.322; MSA 9.2022, relating to the license appeal board and which states as relevant to our purposes:

"Any person, conceiving himself aggrieved by any final determination of the commissioner denying an

application for an operator's or chauffeur's license or suspending or revoking the operator's or chauffeur's license of such person, may appeal therefrom to the board and *the board shall have the power and authority* after hearing *to affirm, modify, or set aside, any final determination of the commissioner denying an application for an operator's or chauffeur's license or suspending or revoking an operator's or chauffeur's license* * * * ."(Emphasis added.)

When interpreting statutes relating to the same general subject matter or having the same basic purpose, they should be construed as consistent and complimentary to each other so as to avoid the appearance of irreconcilable conflict. *De Vito v Blenc,* 47 Mich App 524; 209 NW2d 728 (1973), *People v Ransom,* 54 Mich App 738; 221 NW2d 466 (1974). Additionally, this Court has a duty to construe statutes as constitutional, if possible. *State Highway Commission v Mobarak,* 49 Mich App 115; 211 NW2d 539 (1973).

On the one hand, the Legislature has said that when the Secretary of State has suspended the driver's license of a person institutionalized at a mental hospital because the superintendent has given notice that it is unsafe for that individual to operate a motor vehicle that the license shall remain suspended until the superintendent gives notice that the condition no longer exists. Per contra, our lawmaking body has also provided a general procedure whereby parties aggrieved by the revocation or suspension of their driving privileges may appeal to the appeal board, which in turn may modify or vacate *any* final determination of the commissioner relative to suspension or revocation of a driver's license.

Taken literally, MCLA 257.303a, *supra,* would have the effect of reducing a hearing before the

appeal board to a sham or a farce since the appeal board could not order driving privileges reinstated unless the superintendent of the institution certified that the patient was no longer under a disability. Such a construction of the statute would render totally nugatory the provision in MCLA 257.322, *supra,* with respect to the appeal board having the right and power to reinstate a license suspended or revoked by the commissioner. Nor would this procedure comport with *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971), *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), and the plethora of other case authority cited in Judge KAUFMAN's well-reasoned opinion, relative to the due process rights of a party where he stands to be deprived of substantial property rights.

I cannot attribute to the Legislature an intention to provide a hearing which is, in substance, no hearing at all. Presumptively the law-making body meant precisely what it clearly said when it provided that the appeal board could "modify, or set aside, *any* final determination of the commissioner * * * suspending or revoking an operator's * * * license". (Emphasis added.) That being the case, I would hold that MCLA 257.322, *supra,* controls and that the provision in MCLA 257.303a relative to renewal of drivers' licenses for hospitalized mental patients is for naught. By excising the offending provision, I would reconcile otherwise inconsistent provisions of the vehicle code and simultaneously give effect to the policy objectives behind each statute. This construction meets the constitutional challenges raised by the plaintiff-appellee.

Now there remains only to meet the contention of my colleague that it is a denial of due process to

suspend one's driver's license where there has not been a *prior* opportunity for a hearing on the merits.

This precise issue was recently summarized concisely in these terms:

"The ultimate question in *Burson* was the nature of the governmental interest justifying the use of summary authority in the suspension of drivers' licenses. The Court found that 'the only purpose' of summary suspension was to help private individuals to secure any judgment they might recover from the uninsured motorist. It may well be that such a use of summary authority serves a legitimate governmental purpose, especially since accident victims who do not receive compensation from those who have caused their injuries may require public assistance. *But the legitimacy of the government's interest does not necessarily justify protecting it by summary action. If there was, in Burson, an emergency necessitating summary action, the state made no attempt to demonstrate it.*

"The decisions in these four cases—*Goldberg v Kelly,*[1] *Sniadach v Family Finance Corp,*[2] *Wisconsin v Constantineau,*[3] and *Bell v Burson*[4]—indicate that the Supreme Court is prepared, *after weighing certain factors,* to override a legislative determination that summary action is necessary or permissible. The factors to be considered include the severity of the impact of summary action on the individual's means for survival, his livelihood, and his reputation; the likelihood that the summary action will be taken erroneously; the degree to which it will disable the individual from participating in a subsequent hearing; and the adequacy of the subsequent hearing to protect his interests.

\*     \*     \*

[1] *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970).

[2] *Sniadach v Family Finance Corp,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969).

[3] *Wisconsin v Constantineau,* 400 US 433; 91 S Ct 507; 27 L Ed 2d 515 (1971).

[4] *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971).

*"Although summary action remains a striking exception to the due process requirement of a prior hearing, the Supreme Court has indicated that the state is justified in acting summarily, and hence does so without denying due process, when the state's interest in acting promptly to protect the public against a serious threat to its safety, health, or economic well-being outweighs the individual's interest in having an opportunity to be heard before the state acts, perhaps in error, in ways that may cause him significant injury."* (Emphasis added.) Freedman, *Summary Action by Administrative Agencies,* 40 Chicago U L Rev 1, 25–26 (1972).

Irrespective of whether the "emergency situation" standard or the "balancing of interests" test, alluded to in Judge KAUFAMN's opinion, is applied to the facts of the instant case, I see no constitutional impediment to a *temporary ex parte* suspension of the driver's license of a hospitalized mental patient when the superintendent, pursuant to MCLA 257.303a, *supra,* has certified that the person's mental or physical condition renders it unsafe for him to drive. The statute evidences a purpose to protect the public from a person concerning whom there is a reasonable ground to believe operation of a motor vehicle would create a risk of injury to himself or others. Obviously, the interest of the state in protecting the public is substantial, and it is not unreasonable under the circumstances to permit summary action to the limited extent of *temporarily* suspending the right of a mental patient to drive pending a *prompt* hearing before the appeal board upon timely request by the petitioner. The procedure as visualized in MCLA 257.322, *supra,* would adequately protect a petitioner's rights while, at the same time, affording the public the protection to which it is reasonably entitled.

Because of deficiencies in the notice given to plaintiff-appellee relating to the suspension of her license, which defendant concedes with admirable professional candor, the initial proceeding was infirm *ab initio.*

I would reverse the order of the trial judge setting aside the suspension of plaintiff-appellee's license, and remand the cause for further proceedings before the appeal board after adequate notice to plaintiff-appellee of her right to appeal the order of suspension of the Secretary of State which was based solely on the determination of the medical superintendent.