## CAMERON v SECRETARY OF STATE

### OPINION OF THE COURT

1. AUTOMOBILES—DRIVERS' LICENSES—SECRETARY OF STATE—EX PARTE SUSPENSION—NEGLIGENT HOMICIDE—NOLO CONTENDERE—CONSTITUTIONAL LAW.

There is no constitutional impediment to the temporary ex parte suspension by the Secretary of State of the driver's license of a person who has pled nolo contendere to the charge of negligent homicide where a prior judicial determination was made finding facts upon which it could be reasonably presumed that, temporarily at least, the person involved was an unsafe driver.

2. ADMINISTRATIVE LAW—STATE AGENCIES—STATUTES—DISCRETIONARY AUTHORITY—CONSTITUTIONAL LAW.

A statute granting discretionary authority to an administrative agency without standards, is not invalid per se.

3. AUTOMOBILES—DRIVERS' LICENSES—SECRETARY OF STATE—STATUTES —SUSPENSIONS—CONVICTIONS—CONSTITUTIONAL LAW.

A statute which requires the Secretary of State to suspend a person's license to drive an automobile for a period of not less than 90 days nor more than two years upon receipt by the Secretary of a record of the conviction of such person of a crime specifically enumerated in the statute is constitutional without precise standards to guide the Secretary in the exercise of the suspension where the authority granted by the statute is as reasonably precise as the subject matter requires or permits (MCLA 257.319).

### CONCURRENCE BY O'HARA, J.

4. AUTOMOBILES—DRIVERS' LICENSES—STATUTES—SUSPENSIONS—NEGLIGENT HOMICIDE—CONSTITUTIONAL LAW.

*There is no constitutional infirmity in a statute which provides*

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobiles and Highway Traffic § 274 *et seq.*
  29 Am Jur 2d, Evidence §§ 526, 702.
  Plea of nolo contendere or non vult contendere. 89 ALR2d 540.
[2] 2 Am Jur 2d, Administrative Law §§ 191, 192, 507.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 109–124.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic § 274 *et seq.*

*that the driver's license of a person convicted of negligent homicide in the operation of a motor vehicle shall be suspended (MCLA 257.319).*

Appeal from Ingham, Jack W. Warren, J. Submitted June 3, 1975, at Lansing. (Docket No. 21378.) Decided August 27, 1975. Leave to appeal denied, 395 Mich 774.

Petition by Wayne R. Cameron for restoration of driving privileges suspended by the Secretary of State. Restoration for job commuting purposes ordered by circuit court. Plaintiff appeals, claiming that section 319 of the Michigan Vehicle Code is unconstitutional. Affirmed.

*Farhat, Burns & Story, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas C. Phillips,* Assistant Attorney General, for defendant.

Before: ALLEN, P. J., and D. F. WALSH and O'HARA,* JJ.

ALLEN, P. J. This appeal raises the single issue of whether § 319 of the Michigan Vehicle Code, MCLA 257.319; MSA 9.2019, is unconstitutional as a violation of due process and equal protection guarantees provided in both the State and Federal constitutions. The facts giving rise to the constitutional challenge follow.

Plaintiff pled nolo contendere to negligent homicide in the operation of his motor vehicle and by an amended order was placed on probation for two years and his driver's license suspended for one year ending February 15, 1975. During the one-

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

year suspension period he was permitted to drive to and from his place of employment between 7 a.m. and 6 p.m. On May 14, 1974, acting under the mandatory provisions of § 319 of the Motor Vehicle Code, the Secretary of State peremptorily suspended plaintiff's driving privileges for a one-year period from February 15, 1974 to February 15, 1975.[1] Ten days later plaintiff petitioned the circuit court for restoration of his driving privileges pursuant to MCLA 257.323; MSA 9.2023, alleging the statute under which the Secretary of State acted was arbitrary, capricious, unreasonable and a violation of due process and equal protection guarantees granted in the Michigan and United States Constitutions.

Following a hearing on the petition, the taking of plaintiff's testimony and hearing arguments of counsel, the trial court restored plaintiff's driving privileges for job commuting purposes under conditions substantially identical with the amended order of probation, except said job commuting privileges were extended until February 15, 1976. However, the court declined to rule on the constitutional issues raised in plaintiff's petition. Plaintiff concedes that even if the statute were held to be unconstitutional his driving privileges would still be limited by the amended order of probation, but points out that if the probation were modified at any time prior to its two-year expiration, plaintiff would still be limited in his right to drive by the order of the Secretary of State. It is for this reason that plaintiff appeals urging this Court to declare the statute unconstitutional.

---

[1] Under the above cited statute mandatory suspension of a license to drive is required "for a period of not less than 90 days nor more than two years" upon receipt by the department of state of a record of conviction for negligent homicide in the operation of a motor vehicle.

We first address ourselves to plaintiff's claim that § 319 of the Motor Vehicle Code is arbitrary and confiscatory because it deprives plaintiff of his license to drive peremptorily and without benefit of a prior hearing. A similar claim was made and rejected in the recent case of *Gargagliano v Secretary of State,* 62 Mich App 1; 233 NW2d 159 (1975), In that case plaintiff had been determined to be mentally ill and was placed in a state mental institution. Subsequently her driver's license was peremptorily suspended without a hearing by the Secretary of State who acted under the provisions of § 303a of the Motor Vehicle Code, MCLA 257.303a; MSA 9.2003(1), which, similar to § 319 in the case before us, mandates suspension of a license upon receipt of notice. A majority of the Court found no constitutional infraction by reason of summary *ex parte* suspension prescribed by the statute.[2]

" * * * I see no constitutional impediment to a *temporary ex parte* suspension of the driver's license of a hospitalized mental patient when the superintendent, pursuant to MCLA 257.303a, *supra,* has certified that the person's mental or physical condition renders it unsafe for him to drive. The statute evidences a purpose to protect the public from a person concerning whom there is a reasonable ground to believe operation of a motor vehicle would create a risk of injury to himself or others." Opinion of O'HARA, J., 62 Mich App at 25.

"A judicial hearing having been completed and plaintiff having been determined to be mentally ill, the State is justified in summarily acting so as to deny, *temporarily at least,* the entrustment to her of a high speed motor vehicle. It is a well-known fact, of which we take judicial notice, that accidents are frequently caused by

---

[2] *Gargagliano* held that § 303a was unconstitutional because the mental patient was not provided an effective or meaningful post-restoration hearing. However, such a hearing is provided persons convicted of any of the six offenses prescribed in § 319.

mental disturbances far less serious than those requiring medical consultation or confinement in an institution." Opinion of ALLEN, P. J., 62 Mich App at 16–17.

We find no substantial difference in the summary suspension of the privilege to drive provided in § 303a and § 319 of the Motor Vehicle Code. In each instance a prior judicial determination was made finding facts upon which it could be reasonably presumed that, temporarily at least, the person involved was unsafe to drive. In each instance the protection of the motoring public justifies the state in summarily denying to the individual involved the entrustment of high speed motor vehicles. Unlike *Gargagliano,* plaintiff in the instant case could immediately petition for a modification of the Secretary of State's order under § 323 or for a review of the order under § 322. Thus, the constitutional infirmity eventually found present in *Gargagliano* does not exist in the case before us.

We now turn to plaintiff's claim that § 319 is unconstitutional because it lacks reasonably precise standards to guide the Secretary of State in the exercise of license revocations. In this connection plaintiff argues that because the statute allows the Secretary the broadest range of discretion ranging from a minimum of 90 days to a maximum of two years without the guidance of any standard, the statute is unconstitutional on its face. Again we disagree.

We first note that the Secretary's authority to revoke is precise and specific being limited to six specific factual situations including negligent homicide. Further, acceptance of a "record of conviction" of one of the six specific crimes is a condition precedent to the Secretary's action. In this respect the statute rather than being broad, vague, and discretionary is limited and precise. It is only in

the duration of the forfeiture period that § 319 is discretionary. Pertinently, we note, the range of discretion is not two years as first may appear but is 21 months—the difference between the mandatory suspension of 3 months and the maximum of 24 months allowed by the statute.[3] The dispositive question before us boils down to this—is the 21 months discretionary period given the Secretary without standards unreasonably imprecise in relation to the problem of serious traffic violations addressed by the Legislature.

A grant of discretionary authority, sans standards, to an administrative agency is not invalid per se. In *Argo Oil Corp v Atwood,* 274 Mich 47; 264 NW 285 (1935), the Court sustained a statute giving the Secretary of State discretion, sans standards, to set a bond anywhere from $1,000 to $25,000. In *Department of Natural Resources v Seaman,* 53 Mich App 192; 218 NW2d 813 (1974), our Court upheld the constitutionality of a statute, MCLA 308.1b(1); MSA 13.1491(2)(1), giving the Commission of Natural Resources power to limit the number of fishing licenses when in its opinion "it is necessary for the better protection, preservation, management, harvesting and utilization of the fisheries". In *State Highway Commission v Vanderkloot,* 392 Mich 159; 220 NW2d 416 (1974), the bare standard "necessity" in the highway act was held to be sufficiently precise. The test is whether the standard is "as reasonably precise as the subject matter requires or permits". (Citation omitted.) *Vanderkloot, supra,* 392 Mich 173. Where the purpose of the statute is the protection of the public health or safety, and where the area of discretion makes it impractical to lay down stan-

_____
[3] Plaintiff's brief concedes that the 90-day suspension is constitutional but claims that the absence of standards renders the additional 21 months unconstitutional.

dards, the courts have been less strict in requiring specific standards to guide the licensing agency. Sustaining a statute authorizing the Commissioner of Highways to suspend a license upon a showing that the driver was a "habitual violator of the traffic laws", the Supreme Court of Minnesota said:

"The rule which requires an expressed standard to guide the exercise of discretion is subject to the exception that where it is impracticable to lay down a definite comprehensive rule—such as, where the administration turns upon questions of qualifications of personal fitness, or where the act relates to the administration of a police regulation which is necessary to protect the general health, welfare, and safety of the public—it is not essential that a specific prescribed standard be expressly stated in the legislation. This is so because it is impossible for the legislature to deal directly with the many details in the varied and complex conditions on which it legislates, but must necessarily leave them to the reasonable discretion of administrative officers." *Anderson v Commissioner of Highways,* 267 Minn 308, 312; 126 NW2d 778, 781 (1964).

In *Danner v Hass,* 257 Iowa 654, 662; 134 NW2d 534, 540 (1965), the court rejected a contention that a statute authorizing an *ex parte* suspension of a driver's license upon a showing the driver had committed a "serious violation" of motor vehicle laws was unconstitutional for lack of standards. The court said:

" * * * the trend of authority is to uphold a considerable vesting of discretion in the department [Department of Public Safety] for the purpose of promoting the public safety. The use of motor vehicles on the highways is so patently proven dangerous that we should be slow to strike down any legislation designed to alleviate at least some of the attendant hazards."

Viewed in the context described above and given the frequency and seriousness of highway accident homicide of which we take judicial notice, we conclude that the absence of standards for the Secretary's discretion as to the length of the license forfeiture is not a constitutional blemish. Plaintiff paints a canvas of unconstitutionality with too broad a brush. We cannot agree that § 319, read as a whole, lacks reasonably precise standards. It is specific as to *when* (conviction of six specifically described offenses) forfeiture must be invoked.[4] It is specific as to *how (ex parte* upon receipt of a record of conviction) the suspension shall be invoked. It places parameters (21 months) on the *length* of the suspension. Effective post-revocation review is provided in §§ 322 and 323. The prior driving record for safe or unsafe driving habits of motorists, including drivers convicted of negligent homicide, varies significantly. So do the circumstances under which the homicide occurred. It is reasonable that such offenders would not be punished alike as apparently proposed by plaintiff. The Legislature has provided flexibility in the duration of the suspension and placed limits thereon. The Secretary of State with its trained staff and repository of driving records is in the best position to make the necessary determination. In summary we conclude that the standards provided in § 319 are "as reasonably precise as the subject matter requires or permits".

---

[4] This fact alone distinguishes *Osius v St Clair Shores,* 344 Mich 693; 75 NW2d 25 (1956), *People v Sturgeon,* 272 Mich 319; 262 NW 58 (1935), and *Blumlo v Hampton Township Board,* 309 Mich 452; 15 NW2d 705 (1944), all cited by plaintiff as authority for the statute's unconstitutionality. In such cases *when (i.e.*—circumstances upon which) the administrative agency could deny rezoning or refuse a license was absent or nonspecific. In the case before us the statute is more specific as to when the license is to be revoked.

Affirmed. No costs, the question involved being of public interest.

D. F. WALSH, J., concurred.

O'HARA, J. *(concurring)*. I concur in the result reached by Judge ALLEN. I write separately only to express my view that *Gargagliano*[1] is inapposite.

*Gargagliano* deals with a situation in being. This case deals with a situation after the fact. Hence I do find a difference in the summary suspensions.

*Gargagliano* is manifestly concerned with public protection in keeping a mental patient from operating a motor vehicle.

This case deals with suspension because of a violation over and done with.

Defendant was convicted of an offense the gravamen of which is driving a motor vehicle which negligently caused the death of another.

If the Legislature determines that this fact warrants suspension of his driving privileges, that is the Legislature's business.

I see no constitutional infirmity in its so doing and thus agree with the result reached by Judge ALLEN.

---

[1] *Gargagliano v Secretary of State,* 62 Mich App 1; 233 NW2d 159 (1975).