NICHOLAS v SECRETARY OF STATE

Opinion of the Court

1. Automobiles—Licenses—Revocation—Restoration—Constitutional Law—Due Process—Citations.

A court order partially restoring a revoked driver license denies the licensee due process of law where it contains a provision that mere citation for a moving violation will have the effect of voiding the restricted license and reinstating the previously adjudicated period of revocation.

2. Automobiles—Licenses—Revocation—Restricted Licenses—Constitutional Law—Due Process.

There is little practical difference between the revocation of a driver license and revocation of a restricted license; neither license may be suspended or revoked without affording the licensee due process of law.

3. Automobiles—Licenses—Summary Suspension—Significant Risks—Post-Revocation Hearings—Due Process.

The state may summarily suspend driving privileges where a driver has demonstrated that he presents a significant safety risk; but where the state summarily removes a driver from the road, it must provide a prompt post-revocation hearing which affords the driver rudimentary due process.

4. Automobiles—Licenses—Summary Suspension—Grounds—Trustworthiness—Traffic Citations—Post-Suspension Hearings.

The grounds for summary suspension or revocation of driving

References for Points in Headnotes

[1-3, 5, 7, 8] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 109–112.

Validity, construction and application of statute or ordinance relating to granting or revocation of license or permit to operate automobile. 125 ALR 1459.

[2-4, 6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 116, 117, 120–124.

Necessity and sufficiency of notice and hearing before revocation of driver's license. 10 ALR2d 833.

privileges must contain reasonable indicia of trustworthiness; reliance upon the allegations of a police officer contained in a traffic citation as grounds for suspension of a restricted driver license without a prompt post-suspension hearing on that citation is impermissible.

5. AUTOMOBILES—LICENSES—REVOCATION—PROBATIONARY LICENSES—
    REEVALUATION—PRIOR RECORD.

    A probationary license, once granted, may not be revoked upon mere reevaluation of the prior driving record of the licensee.

6. CONSTITUTIONAL LAW—VALUABLE INTERESTS—SUMMARY DISPOSI-
    TION—DUE PROCESS.

    Summary deprivation of a valuable interest for three months without a hearing plainly violates the notions of fairness which are inherent in due process of law.

DISSENT BY BEASLEY, J.

7. LICENSES—REVOCATION—DISCRETION—REINSTATEMENT—HARDSHIP
    —VESTED RIGHTS.

    *Statutory provisions affording discretion to trial judges in deciding restoration of driver license requests on the basis of hardship have never been interpreted to give a driver a vested right to restoration of his suspended license.*

8. AUTOMOBILES—LICENSES—STIPULATION TO ORDER—LICENSE RE-
    STRICTIONS—REQUEST FOR ORDER.

    *A driver who had requested and stipulated to the entry of an order granting him a limited driver license on the basis of hardship, may not successfully attack that order after suspension of that license.*

Appeal from Oakland, Farrell E. Roberts, J. Submitted October 7, 1976, at Lansing. (Docket No. 26965.) Decided March 2, 1977.

Petition in circuit court by Joseph Nicholas for restoration of a driver license. Petitioner was granted a limited license, revocable upon his receiving any further traffic citations. Petitioner was cited at the scene of a collision and his limited license was confiscated and returned to the Secretary of State. Petitioner filed a motion in circuit

court to amend the original order of restoration. Motion denied. Petitioner appeals. Reversed and remanded.

*Richard G. Chosid & Associates* (by *Eric S. Rosenthal*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Appellate Counsel, for defendant.

Before: M. F. CAVANAGH, P. J., and R. M. MAHER and BEASLEY, JJ.

M. F. CAVANAGH, P. J. On October 30, 1975, the Secretary of State revoked plaintiff's driver license for a period of two years, October 8, 1975, through October 8, 1977, for violation of restrictions contained in a circuit court license restoration order. On December 1, 1975, the circuit court denied plaintiff's motion for restoration of driving privileges. Plaintiff appeals from the circuit court action as of right.

Plaintiff Joseph Nicholas is a poor driver. Since 1965, he has accrued 20 violations of the traffic laws and was involved in five motor vehicle accidents, although no one has been injured in any of his mishaps. On November 6, 1974, the Secretary of State, acting under authority of MCLA 257.320; MSA 9.2020, revoked plaintiff's driver license for a period of one year because he had accumulated too many points.

On November 15, 1974, while plaintiff's license was revoked, he drove without a license and incurred an additional year of revocation, from November 5, 1975, to November 4, 1976.

Because the plaintiff experienced personal hardship in not being able to drive, he petitioned the circuit court for reinstatement of his driver license pursuant to MCLA 257.323; MSA 9.2023, which provides for circuit court review of license suspensions or revocations. On June 4, 1975, the circuit court issued an order for restoration of limited driving privileges for a period ending November 10, 1975. Plaintiff's successful compliance with all of the restrictions contained in this probationary license would have resulted in restoration of full driving privileges at the end of the five-month period. One of the restrictions provided that:

" * * * during the above period of probation, any law enforcing officer or agency is directed to pick up this license and return it to the Secretary of State, Lansing, Michigan, for any of the following reasons:
"1. Upon being cited for any moving violation;

* * *

"[U]pon the violation or non-compliance of any of the above conditions, this Order of Restoration is void and without effect and the original order of denial, suspension or revocation of the Secretary of State is reinstated for the full period of the original suspension, denial or revocation commencing with the date of the violation."

On October 8, 1975, plaintiff was involved in an automobile collision in Livonia. After an on-the-scene investigation, a Livonia police officer cited plaintiff for failure to obey a yield sign and picked up and returned his license to the Secretary of State. On October 30, 1975, the Secretary of State revoked plaintiff's license from October 8, 1975, through October 8, 1977, a period of two years, for violation of the circuit court probationary license. Since this revocation merely reinstated the prior revocation which had been stayed by the order of

restoration, the Secretary of State indicated to the plaintiff that the right to an administrative appeal under MCLA 257.322; MSA 9.2022 did not apply.

On November 17, 1975, the plaintiff filed a motion in circuit court to amend the order of restoration by deleting the provision which reinstated revocation upon the mere citation for a traffic offense. Although a hearing was held on the plaintiff's motion, the merits of the underlying traffic citation were never discussed. The circuit court denied the motion, and the plaintiff filed a claim of appeal.

At the February 6, 1976, trial on plaintiff's traffic citation, the district court granted the people's motion to dismiss.

On appeal, the plaintiff claims that the provision of the order of restoration which requires license revocation upon mere citation for a traffic offense denied him due process of law. We are compelled to agree.

We observe at the outset that the Legislature has a vital concern in the driving abilities of motor vehicle operators who are licensed by its authority. "The legislative concern does not terminate with the issuance of an operator's license, for it is equally vital that drivers remain fit at all times." *Stanek v Secretary of State,* 33 Mich App 527, 531; 190 NW2d 288 (1971).

It is equally clear, however, that "in our mobile society the loss of driving privileges may impair and, in some cases, effectively preclude a man from pursuing his livelihood". *Hall v Secretary of State,* 60 Mich App 431, 437; 231 NW2d 396, 398 (1975). Although operation of an automobile on the state highways is deemed a "privilege", the label of "privilege" or "right" has little relevance in determining the procedures by which the state

may terminate the "privilege". It is well settled that an operator's license may not be suspended or revoked without due process of law. *Bell v Burson,* 402 US 535, 539; 91 S Ct 1586, 1589; 29 L Ed 2d 90, 94 (1971), *Crampton v Department of State,* 395 Mich 347; 235 NW2d 352 (1975).

The fact that plaintiff's license was probationary at the time of revocation does not remove plaintiff from the due process protection of the state and Federal constitutions. *Cameron v Secretary of State,* 63 Mich App 753; 235 NW2d 38 (1975), *lv den,* 395 Mich 774 (1975). There is little practical difference between the revocation of a license and revocation of a restricted license. Only the quantum of the driving privilege differs, not the existence of the privilege; revocation of either can have the same devastating effect.

Although the United States Supreme Court seemed to lay down a sharp-edged test in *Bell v Burson, supra,* that absent an emergency situation, an operator's license could not be revoked without a prior hearing, subsequent cases concerning due process rights have emphasized a more broad-ranged inquiry. See *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), *North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719; 42 L Ed 2d 751 (1975). Our task is to "balance the seriousness of the deprivation against the governmental interest involved". *Bundo v Walled Lake,* 395 Mich 679, 696; 238 NW2d 154, 162 (1976). The validity of a summary procedure must be determined by comparing the extent to which it may subject a defendant to an arbitrary or wrongful deprivation of his property interests with the need of the state to use the procedure in order to further the interests of those whom it seeks to protect. *Gargagliano v Secretary of State,*

62 Mich App 1, 10; 233 NW2d 159, 163 (1975) (opinion of N. J. KAUFMAN, J.).

The plaintiff argues that *Bell v Burson, supra,* and *Gargagliano, supra,* establish that a driver license is such an important interest that the state must show a crucial need in order to justify revocation without a prior hearing. Since the state cannot show an emergency need for this suspension which is not present in any other license revocation, the failure to provide a prior hearing on plaintiff's traffic citation rendered the revocation of his probationary license unconstitutional. We cannot agree that a hearing prior to revocation is constitutionally mandated in these circumstances.

As we noted at the outset, the state has an important interest in public safety on the highways. Where the driver has demonstrated that he presents a significant safety risk, the state's interest to protect the public justifies summary suspension of the driving privilege. *Cameron v Secretary of State,* 63 Mich App 753; 235 NW2d 38 (1975). *Gargagliano, supra,* is not to the contrary. In that case, the majority held that MCLA 257.303a; MSA 9.2003(1) violated due process of law by authorizing suspension of the driver license of any person adjudicated mentally ill upon notification of the Secretary of State by the mental hospital's medical superintendent. The statute provided that the suspended license was not to be restored until the medical superintendent so authorized. Although Judge N. J. KAUFMAN argued that the state must provide a hearing on the driver's ability before suspending his license, Judges ALLEN and O'HARA indicated that a hearing after temporary summary suspension would be consistent with due process. The elements which justified this temporary sum-

mary deprivation were the prior adjudication of
the driver's mental competence, and a prompt
post-suspension hearing. Judges ALLEN and
O'HARA differed only in that Judge ALLEN could
find no provision for a post-suspension hearing in
the statute, while Judge O'HARA argued that
MCLA 257.322; MSA 9.2022 already provided such
a hearing.

*Cameron v Secretary of State, supra,* followed
the "majority" in *Gargagliano* by finding that
peremptory suspension of the license of a driver
convicted of negligent homicide complied with due
process requirements. In *Cameron,* Judge ALLEN,
writing for the majority, emphasized that convic-
tion of negligent homicide was a judicial determi-
nation of guilt of an offense which implies that the
driver is dangerous. Furthermore, the driver could
seek prompt circuit court relief from suspension,
under MCLA 257.322; MSA 9.2022. Since the pres-
ence of these safeguards sufficiently protected the
driver from arbitrary state action, summary sus-
pension of his license was permissible to protect
the public on the highways from a known danger.

The absence of those necessary safeguards re-
quires that we find that the plaintiff was deprived
of due process of law.

Although plaintiff's driving record indicates that
his presence on the road presented some risk, the
circuit court had already weighed that risk in
granting a probationary license in its order of
restoration. Once granted, the probationary license
could not be revoked upon mere reevaluation of
the prior driving record. Both *Gargagliano* and
*Cameron* require that the grounds for summary
suspension or revocation possess reasonable indicia
of trustworthiness—in *Gargagliano* it was an adju-
dication of mental incompetence, in *Cameron,* a

criminal conviction of negligent homicide. In *North Georgia Finishing, Inc v Di-Chem, Inc, supra,* the Supreme Court emphasized that a major factor in upholding the Louisiana pre-judgment sequestration statute involved in *Mitchell v W T Grant Co, supra,* had been the requirement of judicial scrutiny before issuance of a seizure order. In this case, plaintiff's license was revoked upon the allegations of a police officer. Without intending to cast doubt upon the officer's exercise of judgment, we fail to perceive the same indicia of reliability in a traffic citation as are found in an adjudication of mental incompetence or a conviction of a felony. Although a police officer may sometimes act as a neutral decision maker in a dispute between the parties to an accident, in many other instances, the police officer is the sole complaining witness of the traffic offense. Due process demands a preliminary screening by a decision maker more detached than a complaining witness.

Even if the police officer's citation represented a sufficient prior determination of cause for suspension there was no provision for *any* prompt post-suspension hearing on that citation. It is clear from the language of the circuit court's order of restoration that mere citation for a moving violation would have the effect of voiding the restricted license and reinstating the prior adjudicated period of revocation. Since the prior period of revocation stemmed from events before the traffic citation at issue, the rights of administrative appeal under MCLA 257.322; MSA 9.2022 and review of the revocation in circuit court under MCLA 257.323; MSA 9.2023 were inapplicable. Although the state argues that the trial on the traffic citation sufficed as a post-revocation hearing, that trial occurred over three months after revocation of

plaintiff's license. Summary deprivation of a valua-
ble interest for three months without a hearing
plainly violates the notions of fairness which are
inherent in due process of law. Moreover, even
though it may have had good reasons, the state
prevented plaintiff from challenging the merits of
the citation by moving to dismiss the citation at
trial. We are left to conclude that the only hearing
that plaintiff received was the one held at the side
of the road when the citation was issued. Such a
procedure is constitutionally unacceptable.

We must reiterate the limitations of our holding.
The state is not left powerless to protect the public
from dangerous drivers; indeed, the past perform-
ance of drivers such as this plaintiff may indicate
that summary suspension or revocation of their
licenses is necessary to protect the public safety.
We merely hold that where the state seeks to
summarily remove a driver from the road, the
state and Federal constitutions mandate that the
state provide a prompt post-revocation hearing
which affords the driver "rudimentary due proc-
ess". *Bundo v Walled Lake,* 395 Mich 679, 696; 238
NW2d 154, 162 (1976).

Pending a hearing on the merits of plaintiff's
traffic citation, his probationary license must be
restored.

Reversed and remanded for proceedings consist-
ent with this opinion.

R. M. MAHER, J., concurred.

BEASLEY, J. *(dissenting).* I dissent.

In this case, on November 6, 1974, appellant's
driver license was revoked by order of the Secre-
tary of State. The reason for revocation was that
appellant had too many points and, over a period

of time, had been involved in five noninjury accidents. After revocation, defendant was caught driving and his suspension extended another year.

On January 13, 1975, appellant filed a petition in the circuit court for restoration of his driver license asserting that the revocation caused him great personal hardship.

By stipulation between appellant's counsel and an assistant prosecuting attorney, appellant was given a so-called "Caesar's Wife" limited license. This term means that the restricted license will be automatically picked up by "any law enforcing officer or agency" and returned to the Secretary of State "upon being cited for any moving violation, upon evidence of drinking and driving" or upon any other violation of the restoration order. The restoration order contained other requirements which are not relevant here.

After entry of the stipulated order on June 4, 1975, appellant was charged with failing to obey a yield sign in another collision accident. Pursuant to the terms of the order of restoration, his license was picked up and returned to the Secretary of State. On October 30, 1975, the Secretary of State revoked appellant's license for an additional two years, that is, through October 8, 1977.

On November 17, 1975, appellant went back into the circuit court, this time to attack the order he had earlier sought and obtained by stipulation. He claimed the automatic pickup part of the order was unconstitutional, but, of course, otherwise claimed the benefit of the order of restoration. When his petition was denied, he appeals as of right.

Section 323 of the Michigan vehicle code delineates the powers of the circuit court as follows:

"Section 323. Any person denied a license to operate a motor vehicle or whose license for such purpose has been revoked or suspended by the Secretary of State under the provisions of this act or any other law of this state with the exception of the financial responsibility act * * * shall have a right to file a petition for a hearing in the matter in a circuit court in the county from which came the recommendation or conviction upon which such license was denied, suspended or revoked, * * * and such court is hereby vested with jurisdiction and it shall be its duty to enter an order setting the cause for hearing for a day certain in not to exceed thirty (30) days from the date of such order; * * * On the hearing in said cause such court is hereby authorized to take testimony and examine into all the facts and circumstances incident thereto. Such court is further authorized to confirm, modify or set aside such order of suspension, revocation or denial of such license * * * ." MCLA 257.323; MSA 9.2023.

The foregoing must be viewed in conjunction with § 323c which provides:

"Section 323c.

(a). A person denied a license to operate a motor vehicle or whose license for such purpose has been revoked or suspended by the Secretary of State under Section 625f has a right to review the matter in circuit court as provided in Sections 323 and 323a. However, upon a determination confirming or modifying the action of the Secretary of State, the court may issue a restricted license only when all of the following circumstances exist:

(1) Public transportation is not readily available to such person.

(2) Operating his motor vehicle is the only means by which the person can travel to and from his place of employment.

(3) There are no other persons within the person's household who are licensed to operate a motor vehicle in this State and could transport the person to his place of employment. When such restricted license is issued it

shall be issued on condition that the person operate his motor vehicle only to and from his place of employment.

(b). Notwithstanding any other provision of this section, the court shall not issue a restricted license to any person who has accumulated over twenty-four (24) points as provided in Section 320a within the two year period preceding the date of the suspension or revocation of his license." MCLA 257.323c; MSA 9.2023(3).

While § 323c appears to be limited to suspensions arising from driving while under the influence of intoxicating liquors, it is interesting that the necessary conditions of such a restricted license are similar to the usual conditions imposed upon court ordered driver license restorations on the basis of alleged hardship.

These statutory provisions vest discretion in the trial judge to determine whether under all the facts and circumstances the suspension should be confirmed, modified or set aside.

It is clear that in view of appellant's very bad driving record, there would have been no abuse of discretion if the initial suspension had been confirmed. As a matter of fact, the discretion afforded trial judges in restoration of driver licenses under these and preceding statutes on a hardship basis has never been interpreted or even thought of as giving a driver a vested right to restoration. However, acting in reliance upon the stipulation of the attorneys, the suspension was modified to afford appellant a restricted license.

There is no constitutional issue involved here. Appellant cannot, under these circumstances, obtain relief from the court and then turn around and claim that the very relief he obtained is unconstitutional when it later serves his purpose to do so. Part of the purpose in the "Caesar's

Wife" provision is that it is well known among
those who try lawsuits that adjudication of a
traffic ticket can be delayed for many months by
resourceful counsel and, thus, a mockery can be
made of the time provisions of the point system.
Under the circumstances of this case, appellant's
claim that the automatic pickup provision is un-
constitutional is without merit. Where a driver
seeks a limited driver license after suspension on
the basis of hardship and stipulates to entry of
such an order, he cannot later successfully attack
it.

It is also worth noting that if appellant was
correct in his argument, then the order of restora-
tion would be invalid. It would be a strange result
if the automatic pickup portion of the stipulated
order was invalidated, but the rest remained in
full force and effect. If, as appellant claims, the
automatic pickup provision is unconstitutional, I
would set aside and find the order of restoration
ineffective, leaving appellant to the control and
order of the Secretary of State. However, as indi-
cated, it is not necessary to so find here.

I would affirm the order of the trial court deny-
ing appellant any further relief.