Filed 9/11/25  Duket v. Gordon CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DUSTIN TAYLOR DUKET, | B335785 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP00664) |
| v. | |
| STEVE GORDON, as Director, etc., | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed and dismissed in part.

Markelz Law Group and Christopher Markelz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Anthony William Gomez, Deputy Attorneys General, for Defendant and Appellant.

_____

Dustin Taylor Duket (Duket) filed a petition for writ of mandate challenging the constitutionality of Vehicle Code section 13352, subdivision (e)(2),[1] which requires the Department of Motor Vehicles (DMV) to suspend a restricted driver's license without a hearing when it receives notice from a driving-under-the-influence (DUI) program that the driver has failed to comply with the program's requirements. Although the trial court concluded that Duket had not shown that section 13352, subdivision (e)(2), is facially unconstitutional, the court granted the petition on the ground that, as applied to Duket, the statute violates procedural due process. Both Duket and the DMV[2] appealed from the ensuing judgment.

We dismiss Duket's appeal. As the prevailing party, he lacks appellate standing. We address the merits of the DMV's appeal and affirm the judgment.

## BACKGROUND

I. *Facts*

    A. <u>Duket enrolls in a DUI program</u>

Duket was convicted of driving under the influence in 2011 and again in 2021. Following his second conviction, the DMV suspended Duket's license for two years. The DMV stayed the suspension and issued Duket a restricted driver's license after he enrolled, as a condition of his probation, in an 18-month DUI program at ABC Traffic Programs (ABC Traffic).

---

[1]     All further statutory references are to the Vehicle Code unless otherwise indicated.

[2]     The petition was filed against defendant Steve Gordon (Gordon), as director of the DMV. For simplicity, we refer to Gordon as the DMV.

2

Duket's enrollment contract with ABC Traffic required him "to attend interviews, individual counseling sessions, group sessions and educational sessions all by appointment." It provided that Duket would "be referred back to the referring agency for consideration of termination" for reasons including (1) failure "to comply with drinking driver program rules and policies"; (2) failure "to obtain a leave of absence, in accordance with [California Code of Regulations, title 9, s]ection 9876.5, when the participant is unable to attend scheduled program services for 21 days or more"; and (3) exceeding "the number of absences allowed in [California Code of Regulations, title 9, s]ection 9876[, subdivision] (d)" without an approved leave of absence.

Duket also signed a "Program Contract Review" that stated: "Ten . . . absences or no activity within 21 days will result in your case being referred back to the proper agency for notification of non-compliance[.] (DMV will also be notified, and your license will be suspended, and the court may issue a bench warrant for violation of court order.)" (Underlining and bolding omitted.)

B. <u>Duket is terminated from the DUI program for exceeding the number of allowed absences</u>

On January 9, 2022, Duket's live-in girlfriend and her children were confirmed to be infected with COVID-19 (COVID). Because Duket had close contact with them, his employer placed him on paid administrative leave. Duket became ill with COVID on January 17, 2022. Los Angeles County Department of Public Health orders directed him to isolate/quarantine until January 20, 2022.

3

Before a scheduled in-person meeting at ABC Traffic on January 19, 2022, Duket called to reschedule and to request a leave of absence. The program clerk told Duket that it was not possible to reschedule the meeting within 24 hours of the appointment, that his leave-of-absence request was untimely, and that his absence would be treated as a missed meeting.

On February 1, 2022, Duket went to ABC Traffic in person to reschedule the missed meeting. He explained that he had missed the meeting because of his exposure to COVID and his own COVID illness. Duket was informed that he had been terminated from the DUI program on January 19, 2022, for exceeding the number of allowed absences.

C.  The DMV suspends Duket's restricted driver's license

On February 16, 2022, the Orange County Superior Court granted Duket's request to be reinstated in the DUI program.

One day later, on February 17, 2022, the DMV sent Duket an order of suspension, notifying him that his "privilege to operate a motor vehicle [wa]s suspended effective February 21, 2022." The order stated that the action was taken under section 13352 because the DMV had "been notified that [Duket] failed to comply with the terms of" his DUI program.

The order of suspension further provided that Duket's "driving privilege shall not be reinstated before September 15, 2023[,]" and not until the DMV received proof of financial responsibility and proof of completion of a DUI program.

II.  *Procedural History*

A.  Petition for writ of mandate; supplemental petition

Duket filed a verified petition for peremptory writ of mandate to set aside the February 17, 2022, order of suspension. In the petition, Duket asserted that section 13352,

4

subdivision (e)(2), which required the DMV to suspend his restricted driver's license without a hearing, was unconstitutional on its face and as applied to him.

On April 25, 2022, Duket filed a supplemental petition with additional allegations, including that he had "'public interest standing' to challenge" the constitutionality of section 13352, subdivision (e)(2). He also sought an award of attorney fees under Code of Civil Procedure section 1021.5.

The DMV filed answers to Duket's petitions.

B. <u>Preliminary injunction</u>

On May 9, 2023, the trial court granted Duket's motion for a preliminary injunction and enjoined the DMV from suspending his driver's license.

C. <u>Trial court's ruling</u>

On October 3, 2023, the trial court issued its ruling granting Duket's petition for writ of mandate. Although the court concluded that Duket had not satisfied the "'heavy burden'" required to show that section 13352, subdivision (e)(2), "'inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions' such that it should be found unconstitutional on its face[,]" the court found merit in Duket's as-applied constitutional challenge.

The trial court found that, as applied to Duket, section 13352, subdivision (e)(2), "violates procedural due process[.]" Duket "may have been improperly dismissed from the DUI program[,] . . . but the applicable statutes and regulations do not provide for [the] DMV to reverse any improper dismissal[.]" As for "[t]he ultimate issue of whether [Duket] timely requested a leave of absence (or [wa]s otherwise entitled to have his absence

5

excused)[,]" the court "reserved" the issue for the "DMV at a post-suspension hearing."

D. Judgment; appeals

The trial court subsequently entered judgment "in favor of [Duket] and against [the DMV]." Duket and the DMV each appealed from the judgment.

**DISCUSSION**

I. *Duket's Appeal*

Duket raises two issues on appeal. First, he argues that section 13352, subdivision (e)(2), is unconstitutional on its face. Second, he contends that the trial court erred by admitting into evidence the declaration of Jeannie Ho (a Department of Health Care Services section chief) and an e-mail exchange between the parties' respective counsel. We do not reach the merits of either argument because Duket, as the prevailing party, lacks standing to appeal from the judgment.

"In a mandamus proceeding, just as in a civil action, '[a]ny party aggrieved may appeal' from the final judgment. [Citations.] 'One is considered, "aggrieved" whose rights or interests are injuriously affected *by the judgment*.' [Citation.]" (*El Dorado Irrigation Dist. v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 977 (*El Dorado*).) The injurious effect must be "immediate and substantial . . . , and not as a nominal or remote consequence of the decision. [Citations.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

"Conversely, '[a] party who is not aggrieved by an order or judgment has no standing to attack it on appeal.' [Citation.]" (*El Dorado*, *supra*, 142 Cal.App.4th at p. 977.) Generally, a party is not aggrieved by a judgment rendered in that party's favor. (See *ibid.*; *Nevada County Office of Education v. Riles* (1983)

6

149 Cal.App.3d 767, 779.) Because lack of standing is a jurisdictional defect, an appeal is subject to dismissal if the appellant does not have standing. (*In re B.S.* (2021) 65 Cal.App.5th 888, 893; see also *In re J.B.* (2025) 109 Cal.App.5th 133, 139 ["'Without standing there is no justiciable controversy for a court to entertain[]'"].)

Here, Duket appeals from a judgment expressly entered in his favor granting his petition for writ of mandate. "Because [Duket] cannot claim to be aggrieved by the trial court's judgment in [his] favor, [Duket] lacks standing to appeal from that judgment . . . ." (*El Dorado, supra,* 142 Cal.App.4th at p. 977.)

Duket resists this conclusion, contending that he "had, and continues to have, standing to challenge the constitutionality of . . . section 13352, subdivision (e)(2), both individually and on behalf of the public." Duket argues that the portion of the trial court's ruling concluding that section 13352, subdivision (e)(2), is not facially unconstitutional was "unfavorable [to him] as it relates to his bringing of the action in the public interest."[3]

We disagree. Duket's facial and as-applied challenges were not separate *claims* but rather different *arguments* in support of the claim that section 13352, subdivision (e)(2), violates due process. (See *Citizens United v. Federal Election Com'n* (2010) 558 U.S. 310, 331 [explaining that a facial challenge was "'not a

_____

[3] Whether Duket had public interest standing to bring this action in the trial court is not the issue before us. For this reason, *California DUI Lawyers Assn. v. California Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, which considered whether the plaintiffs had taxpayer standing to bring an action under Code of Civil Procedure section 526a and upon which Duket relies heavily, is inapposite.

new claim[]'" but was—"at most"—a new argument supporting a First Amendment claim].) Indeed, courts may decline to address a facial constitutional challenge when an as-applied challenge is meritorious. (See *In re Eduardo C.* (2001) 90 Cal.App.4th 937, 940 [declining to address facial constitutional challenges where as-applied challenge to statute was "dispositive"].)

As the United States Supreme Court has explained, "although the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute [citations], we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." (*U.S. v. National Treasury Employees Union* (1995) 513 U.S. 454, 477–478; see also *In re Taylor* (2015) 60 Cal.4th 1019, 1039 ["consideration of as-applied challenges, as opposed to broad facial challenges, 'is the preferred course of adjudication since it enables courts to avoid making unnecessarily broad constitutional judgments[]'"].)[4]

_____

[4] It does not appear that section 13352, subdivision (e)(2)'s facial constitutionality is an issue evading review. Upon Duket's request, we judicially noticed court records in *Randolph v. Gordon* (Super. Ct. L.A. County, 2024, No. 22STCP02919) (*Randolph*). (Evid. Code, §§ 452, subd. (d), 459.) According to those records, on February 21, 2024, the superior court in *Randolph* granted a petition for writ of mandate, concluding that sections 13352, subdivision (e)(2), 13352.4, subdivision (f), 13353.75, subdivision (a)(1)(C), and 13353.6, subdivision (a)(1)(C), "are facially unconstitutional as a matter of due process because they do not provide the driver an opportunity for an administrative hearing to determine whether his or her driver's license should be suspended or revoked after the DMV receives notification from a DUI program that the driver has been dismissed from the program." The superior court

8

Because Duket has failed to show that the judgment injures him in any "immediate and substantial way[,]" he is not an "aggrieved person" with standing to appeal. (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.) Accordingly, we dismiss his appeal.

## II.  *The DMV's Appeal*

In its appeal, the DMV argues that section 13352, subdivision (e)(2), is not unconstitutional as applied to Duket, and, therefore, the trial court erred in granting Duket's petition for writ of mandate.

### A.  Standard of review

We review the constitutionality of section 13352, subdivision (e)(2), de novo.  (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 642.)

### B.  Relevant law

#### 1.  *Section 13352*

Upon receipt of an abstract of record showing that a person has been convicted of a DUI, the DMV "shall immediately suspend or revoke" that person's privilege to operate a motor vehicle.  (§ 13352, subd. (a).)  For those convicted of a second DUI offense within a 10-year period, the suspension is for two years. (§§ 13352, subd. (a)(3)(A), 23152, 23540.)

A person subject to a two-year driver's license suspension may apply to the DMV for a restricted driver's license if, among other requirements, he or she provides proof of enrollment in an 18-month DUI program.  (§ 13352, subd. (a)(3)(A)(ii)(I).)  But if the DUI program notifies the DMV that the driver has failed to comply with the program's requirements, the DMV "shall"

---

noted that the petitioner in that case had abandoned his as-applied challenge to the statutes. *Randolph* is currently pending on appeal in Division Seven of this Court (case No. B338305).

9

suspend or revoke the restricted driver's license. (§ 13352, subd. (e)(2).)[5] A person whose restricted driver's license is suspended under section 13352, subdivision (e)(2), is not entitled to a hearing. (See § 14101, subd. (a) ["A person is not entitled to a hearing . . . [¶] . . . [i]f the action by the department is made mandatory by this code"].)

2. *DUI program regulations*

Health and Safety Code section 11836 vests the Department of Health Care Services (DHCS) with "the sole authority to issue, deny, suspend, or revoke the license of a [DUI] program." (Health & Saf. Code, § 11836, subd. (a).) Regulations regarding DUI programs are codified in title 9 of the California Code of Regulations. (Health & Saf. Code, § 11836.15; Cal. Code Regs., tit. 9, § 9795 et seq.)

As relevant here, the regulations require a DUI program participant "to attend all scheduled activities unless the participant has: [¶] (1) Contacted the DUI program and arranged to attend an activity at an alternate time, or [¶] (2) Been granted an approved leave of absence . . . ." (Cal. Code Regs., tit. 9, § 9876, subd. (a)(1)-(2).) A participant in an 18-

---

[5] Section 13352, subdivision (e)(2), the statute challenged in this action, provides in full: "[T]he [DMV] shall terminate the restriction imposed pursuant to this section and shall suspend or revoke the person's driving privilege upon receipt of notification from the [DUI] program that the person has failed to comply with the program requirements. The person's driving privilege shall remain suspended or revoked for the remaining period of the original suspension or revocation imposed under this section and until all reinstatement requirements described in this section are met."

10

month DUI program is not permitted more than 10 absences. (Cal. Code Regs., tit. 9, § 9876, subd. (d)(4).)

A participant must "request prior approval for all leaves of absence, unless unable to do so due to circumstances beyond the participant's control." (Cal. Code Regs., tit. 9, § 9876.5, subd. (c).) A leave of absence "shall" be approved for "[p]articipants who are absent due to their own extended illness or medical treatment or that of a family member" and for "[p]articipants who cannot participate in program services due to an extreme personal hardship or family emergency." (Cal. Code Regs., tit. 9, § 9876.5, subd. (e)(3), (5).)

### 3. *Procedural due process*

"Both the federal and state Constitutions compel the government to afford persons due process before depriving them of any property interest. [Citations.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*).) "'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."'" [Citations.] The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.' [Citations.]" (*Ibid.*; see also *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 379 ["'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner[]"'"].)

"[T]he precise dictates of due process are flexible and vary according to context. [Citations.]" (*Today's Fresh Start, supra*, 57 Cal.4th at p. 212.) We balance four factors to evaluate the adequacy of government process: (1) The private interest affected by the government action; (2) the risk of an erroneous deprivation

11

of that interest; (3) "'"the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official"'"; and (4) the government's interest. (*Id.* at p. 213.)[6]

An as-applied constitutional challenge "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)

C. <u>Analysis</u>

We separately address and then balance the private interest affected, the risk of erroneous deprivation, the dignitary interest, and the government's interest to evaluate whether, as applied to Duket, the mandatory suspension of Duket's restricted driver's license pursuant to section 13352, subdivision (e)(2), without a hearing, comports with procedural due process.

1. *Private interest affected*

The private interest at issue is Duket's possession of a restricted driver's license. (See *Mackey v. Montrym* (1979) 443 U.S. 1, 10 ["suspension of a driver's license for statutorily defined cause implicates a . . . protectible property interest"]; *Dixon v. Love* (1977) 431 U.S. 105, 112 ["It is clear that the Due Process Clause applies to the deprivation of a driver's license by

---

[6]     The trial court referred to these considerations as the "*Oberholzer*/*Mathews* factors[.]"  (See *Mathews v. Eldridge* (1976) 424 U.S. 319, 334–335; *Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 390–391.)

12

the State"]; *Clarke v. Gordon* (2024) 104 Cal.App.5th 1267, 1274–1275.)

Duket established that he had a particularly high interest in his continued possession of a driver's license. The trial court found that Duket "need[ed] his driver['s] license for work and that he could lose his employment if his restricted license [wa]s suspended."[7] "Once licenses are issued, as in [Duket]'s case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees." (*Bell v. Burson* (1971) 402 U.S. 535, 539.)

The DMV suggests that the private interest is not significant because Duket only possessed a *restricted* driver's license. We are not persuaded. "There is little practical difference between the revocation of a license and revocation of a restricted license. Only the quantum of the driving privilege differs, not the existence of the privilege; revocation of either can have the same devastating effect." (*Nicholas v. Secretary of State* (Mich. Ct. App. 1977) 74 Mich.App. 64, 69.)

### 2. *Risk of erroneous deprivation*

Duket's termination from his DUI program and the concomitant suspension of his restricted driver's license under section 13352, subdivision (e)(2), were consequences of his absence from a January 19, 2022, meeting at ABC Traffic. Duket presented evidence that he missed the meeting because of his exposure to his COVID-stricken girlfriend and her children, his own COVID illness, and public health directives requiring him to isolate/quarantine. When Duket called ABC Traffic on the day of the scheduled meeting, but prior to its start time, to reschedule

---

[7] The DMV does not challenge this factual finding.

13

and to request a leave of absence, he was told by a program clerk that it was not possible to reschedule the meeting within 24 hours of the appointment, that his leave-of-absence request was untimely, and that his absence would be treated as a missed meeting.

Under these circumstances, there is a substantial risk that Duket was improperly terminated from the DUI program and, thus, erroneously deprived of his restricted driver's license under section 13352, subdivision (e)(2). (See Cal. Code Regs., tit. 9, § 9876.5, subds. (c) ["The DUI program shall require the participant to request prior approval for all leaves of absence, unless unable to do so due to circumstances beyond the participant's control"], (e)(3) [leave of absence "shall" be approved for "[p]articipants who are absent due to their own extended illness or medical treatment or that of a family member"], (e)(5) [leave of absence "shall" be approved for "[p]articipants who cannot participate in program services due to an extreme personal hardship or family emergency"].)[8]

The DMV argues that the risk of an erroneous deprivation was low because Duket "had options" to challenge his dismissal from the DUI program by (1) submitting a grievance with DHCS or (2) seeking review from the court of conviction. We conclude that neither option provided a robust safeguard against an erroneous deprivation.

---

[8] We do not make any finding, actual or implied, that Duket was inappropriately terminated from the program. Rather, we detect a sufficient probability of such error solely for the purpose of assessing the risk of an erroneous deprivation of his protected property interest in his restricted driver's license.

14

"Any person may request an investigation of a DUI program by contacting [DHCS] . . . in order to determine compliance with the provisions" governing DUI programs. (Cal. Code Regs., tit. 9, § 9823.1, subd. (a).) While DHCS must initiate an investigation within 10 working days of such a request, no time is prescribed for the completion of the investigation. (See Cal. Code Regs., tit. 9, § 9823.1, subds. (b), (f).) And, while a DHCS investigation may result in the issuance of a notice of deficiency to the DUI program (Cal. Code Regs., tit. 9, § 9823.1, subds. (g), (i)), the regulations set forth no clear process whereby either DCHS or the DUI program is required to notify the DMV that a participant was improperly terminated.

As for seeking review in the criminal court that referred him to the DUI program, the DMV points us to no authority allowing that court to order the DMV to reinstate a restricted driver's license suspended pursuant to section 13352, subdivision (e)(2).[9]

### 3. *Dignitary interest*

Given the importance of his possession of a restricted driver's license, Duket's dignitary interest in being "inform[ed] . . . of the nature, grounds and consequences of the action" by the DMV and being able "to present [his] side of the story before a responsible governmental official" (*Rodriguez v. Department of Real Estate* (1996) 51 Cal.App.4th 1289, 1297) is also high. The DMV contends that Duket could have challenged

---

[9]     We are also unpersuaded by the DMV's contention that Duket could have filed a petition for writ of mandate against the DMV, DHCS, or ABC Traffic. The availability of relief through the judicial process does not absolve the DMV from its due process obligations.

15

his dismissal from the DUI program with DHCS or the court of conviction, or through a writ of mandate. But these options do not significantly diminish Duket's dignitary interest in a hearing before the DMV, which is the department that granted his restricted driver's license and was required under section 13352, subdivision (e)(2), to suspend it.

4. *Government's interest*

There can be no question that the government has a compelling interest in protecting the public from a driver who has been twice convicted of DUI offenses and has been terminated from a DUI program. (See *Birchfield v. North Dakota* (2016) 579 U.S. 438, 464 ["The States and the Federal Government have a 'paramount interest . . . in preserving the safety of . . . public highways[]'"]; see also *id.* at p. 465 ["Our cases have long recognized the 'carnage' and 'slaughter' caused by drunk drivers"]; *People v. Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 765 ["the shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response"].) However, as the trial court observed, "the governmental interest in ensuring the safety of the roads would not necessarily be harmed by affording a post-suspension hearing, which would allow for a challenge to the suspension only after the suspension had taken effect."

We also acknowledge that providing a hearing to Duket imposes an administrative and financial burden on the DMV. The extent of this burden depends on the scope of the hearing offered.

5. *Balancing of factors*

While we recognize the important government interest involved, the balance of factors weigh in Duket's favor. We reach

16

the same conclusion as the trial court:  As applied, section 13352, subdivision (e)(2), violates Duket's right to procedural due process.

### DISPOSITION

Duket's appeal is dismissed.  The judgment is affirmed. Duket is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
    ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
RICHARDSON

17